THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE TORRES SANTIAGO, Appellant.

Second Department, May 29, 1978

**APPEARANCES OF COUNSEL**

*Stephen Ross* (*Donald Morenstein* on the brief), for appellant.

*Eugene Gold, District Attorney* (*Beth S. Lasky* of counsel), for respondent.

## OPINION OF THE COURT

Margett, J.

Defendant was convicted of the murder of a 20-year-old girl who was pinned between a moving subway train and the subway platform as a result of his unsuccessful attempt to snatch her purse from his position between cars of the moving train. In convicting the defendant of felony murder, the jury necessarily found that he had attempted to rob his victim. On appeal defendant argues, *inter alia,* that purse snatching cannot be considered anything more than a larceny, which is not one of the felonies enumerated in the felony murder statute (Penal Law, § 125.25, subd 3). We reject this contention and hold that the method of purse snatching here employed did constitute the crime of robbery.[1]

The facts adduced at the trial may be briefly summarized. The victim, Regina Graham, left her Brooklyn home on the morning of November 30, 1970 to buy a birthday present for her brother. That same morning defendant met a friend named Samaniego, who was about to travel from Brooklyn into Manhattan by subway to pick up his girlfriend. Defendant told Samaniego that he intended to "snatch one on the way uptown." Samaniego understood defendant to mean that he intended to snatch a pocketbook. Defendant and Samaniego boarded a subway train at Utica Avenue.

Defendant and his friend changed trains at Nevins Street. Samaniego sat down in the forward end of one of the cars toward the rear of the train. Shortly before the subway train pulled out of the station, defendant left Samaniego, ran toward the rear of the car, opened the door leading to the next car and disappeared from view. A passenger seated across from Samaniego observed Regina Graham standing on the platform in front of the door which was about to close.

The train started to move and the conductor, who was looking toward the rear of the train, saw an arm stick out from between two cars. The arm had Regina Graham by the pocketbook or the coat and was pulling her down. With the momentum of the train, she "started to move forward" and the arm was "still on her person" as she started to stumble. The conductor pulled the emergency cord to stop the train, but the girl's leg had already become wedged between the train and the platform.

---

1. At bar we have an attempted robbery, actually, since defendant failed to haul in his swag, which landed intact on the roadbed between two of the subway cars.

Within seconds after the train had stopped, defendant re-entered the car in which Samaniego was seated and sat down next to him. He told Samaniego he had "missed the pocket-book" and that the "lady went down." He then told Samaniego to switch jackets with him and the exchange was made. The two of them then walked through several cars heading towards the forward end of the train. The conventional entrance-exit doors of the train were all closed, so defendant and Samaniego exited the train by going between two cars and lifting the chain safety gate between the cars. They boarded another train, re-exchanged jackets and rode into Manhattan, where Samaniego got off to meet his girlfriend.

Regina Graham suffered extensive "crushing injuries" of the pelvic area and both legs; three-quarters of the last car had apparently passed over her body before the train was stopped. She died 11 days later as a result of her injuries.

The sole defense was insanity. Defendant told one psychiatrist that he had learned to snatch purses from subway trains at the age of six and that he had been using this technique for 12 years. On an average day he might steal as many as seven or eight purses during rush hour. Defendant also told the psychiatrist that he feels depressed when he does not rob. In addition, the expert witness testified that he had learned, from defense counsel, that defendant used to bring pocket-books home to his mother and that she would take part of the money and let him keep the rest. It was the conclusion of this expert, as well as that of a second psychiatrist called by the defense, that defendant has a compulsion to steal purses and that he lacked substantial capacity to appreciate the nature and consequences of what he was doing on November 30, 1970.

The expert called by the People in rebuttal testified, in essence, that defendant had a bad habit, not a compulsion. He described defendant as a sociopath with chronic delinquent urges, who knew the danger and quality of the act and that it was wrong.

Following this testimony, defendant moved to dismiss the indictment on the ground that the People had failed to prove that he used "physical force" and that, therefore, he could not be guilty of attempted robbery (see Penal Law, § 160.00) or of felony murder (see Penal Law, § 125.25, subd 3). Defendant's mode of operation was likened to that of a pickpocket. The motion was denied; the trial court indicated that the question

of whether robbery had been proven beyond a reasonable doubt would be submitted to the jury. The elements of robbery were charged to the jury, which returned a verdict of guilty of felony murder.

■ On appeal defendant again likens his actions to those of a pickpocket and contends that the proof was insufficient to establish felony murder. Viewed in a light most favorable to the People's case (see *People v Monaco,* 14 NY2d 43; *People v Fidler,* 280 App Div 698), the evidence was sufficient to establish, under any generally accepted standard, that Regina Graham's death was the result of an attempted robbery. Moreover, we hold, as a matter of law, that the *modus operandi* here employed constitutes "physical force" within the meaning of the robbery statute (see Penal Law, § 160.00).

Those few New York cases which have discussed "purse snatching" are generally in accord with the rule followed by most jurisdictions, viz., a snatching unaccompanied by any resistance is not sufficient to constitute a robbery *(McCloskey v People,* 5 Parker Cr Rep 299; see, also, *People v Hall,* 6 Parker Cr Rep 642; *People v McGinty,* 24 Hun 62; Purse Snatching as Robbery or Theft, Ann. 42 ALR3d 1381). The rule in New York was formulated against the backdrop of a 10-year mandatory minimum sentence of imprisonment for robbery in the first degree (Rev Stat of NY, part IV, ch I, tit III § 71 [1875 ed], § 57 [1852 ed])[2] and was enunciated in cases which involved the most innocuous of fact patterns. Thus, in *McCloskey v People (supra),* the defendant met the complainant in a bar and both had been drinking. They left the bar and, as they were walking along the street "in a friendly manner", the defendant reached into the complainant's pocket and took some coins. "No more force was used than sufficient to pull the money out of the pocket of the [complaining] witness" (5 Parker Cr Rep, at p 307). The complainant "evidently considered and treated the * * * [defendant's] conduct as a joke." He made no resistance "and yielded neither to force or fear" (5 Parker Cr Rep, at p 308). At the trial the court charged that if the force used were sufficient to make out an assault and battery, there would be a robbery. It further charged that if the jurors believed the complainant, they must find the defendant guilty of robbery. On appeal it

2. Cf. Penal Law, §§ 70.00, 160.15—today a court may impose an indeterminate sentence (with no minimum) of up to 25 years' imprisonment for robbery in the first degree.

was held that "[t]he mere snatching anything from the hand or the person of any one, without any struggle or resistance by the owner, or any force or violence on the part of the thief, will not constitute robbery" (5 Parker Cr Rep, at p 306). It was further held that it was error to equate a simple assault and battery with robbery and that a greater degree of violence is necessary to make out a robbery. Examples of such a greater degree of violence, taken from English cases, were used—e.g., it is a robbery when an earring is taken with such violence as to lacerate the ear of the wearer, or where a diamond hair ornament is pulled with such force as to tear a part of a lady's hair from her head.

*People v Hall* (6 Parker Cr Rep 642, *supra)* involved an apparent misunderstanding about a watch between two men who knew each other. The defendant complained to a constable, who told the complainant to stop and that he had better return defendant's watch if he had it. The complainant told the constable to search him. The constable took a watch out of the complainant's pocket and showed it to the defendant, who said it was not his watch. Nonetheless, defendant asked the constable if he could hold it. The constable complied and then asked the complainant whether he had another watch. The complainant took another one out of his pocket—this one was attached to a chain. The defendant said that it was not his either, but yanked the watch loose from the chain and said: " 'Damn him, I've got two for one—let him go' " (6 Parker Cr Rep, at p 644). Defendant was convicted of robbery, but a new trial was ordered because the court had charged that the degree of violence used was sufficient to warrant finding the defendant guilty of the offense. The court stated (p 652): The especial heinousness of the offense of robbery over simple larceny, consists in the terror and fear inspired, and in the apprehension and *danger of injury to the person* involved in the commission of the offense * * * There must be such force employed, or such degree of force, as shall overcome the free agency or power of resistance of the person despoiled" (emphasis supplied).

Finally, in *People v McGinty* (24 Hun 62, 63, *supra),* defendant was charged with robbery after he knocked a man's pockebook out of his hand in a bar and then physically threw him out of the door. The charge to the jury was that "if the force which was used was sufficient to deprive complainant of his property against his will, that would be sufficient to

constitute the violence to the person" necessary to prove robbery (p 63). The court held that to be error, noting that a pickpocket who steals a handkerchief uses sufficient force to deprive the owner of his property. The court further held (p 64) that the violence necessary to make out robbery "generally implied the overcoming, or attempting to overcome, an actual resistance".

These cases have limited precedential value because of the harsh sentencing laws at the time they were decided and their peculiar facts. No District Attorney would now seek a robbery indictment on the facts of *McCloskey* or *Hall*—the courts therein were obviously grappling with hypertechnical definitions of force. Thus, *McCloskey* involved the question whether a simple "unpermitted touching"—a technical assault—constituted sufficient force, while it appears that the defendant in *Hall* was faced with a robbery conviction principally because the "second" watch was yanked from a chain, a number of English cases having held that where a chain or pendant was broken during the course of a snatching, the act constituted robbery. As for *McGinty,* the result would probably be different today since, by statute, the element of physical force may be satisfied by the use of physical force "immediately after the taking" for the purpose of retaining the stolen property (see Penal Law, § 160.00, subd 1; see, also, *People v Beebe,* 70 Mich App 154, for a full discussion of the law with respect to *when* the element of force must occur—most jurisdictions now consider the totality of a "transaction" in deciding whether an actor's conduct may be termed a robbery). Even in the early cases it was recognized that the overcoming of any resistance would be sufficient force to constitute a robbery.

In a majority of the other jurisdictions, the same general rules apply. Thus, "a sudden taking or snatching may be accompanied by sufficient force to constitute robbery" (Ann. 42 ALR3d 1381, 1385, § 5[a]; *Adams v State,* 295 So 2d 114 [Fla App] [resistance in any degree is sufficient]; *State v Houston,* 451 SW2d 37 [Mo] [the victim's assailants grabbed her, knocked her down and snatched her purse with sufficient force to tear the straps thereof—held, no error not to charge stealing]; *Williams v State,* 7 Md App 683 [sufficient evidence for the trier of facts to conclude that the victim resisted—such a degree of violence was employed that the pocketbook fell to the ground]; *Bauer v State,* 45 Ariz 358 [even though a

snatching is not looked upon as a taking by force, it is otherwise where there is a struggle to keep the property]).

The "majority rule" has been criticized on the ground that it "put[s] a premium on criminal skill and adroitness", since the thief who is clumsy or slow enough to enable his victim to resist faces a more severe penalty than the more "professional" snatcher (Note, 23 J Crim Law 113, 115). A few jurisdictions have held that a snatching of property from the victim is sufficient to constitute a robbery regardless of the victim's resistance or lack thereof (Jones v Commonwealth, 112 Ky 689; State v Carr, 43 Iowa 418). In Jones v Commonwealth (supra, p 695), the court concluded from the evidence that the grabbing of the pocketbook from the complainant's hand "was probably done so quickly that he had no chance to actively resist". Nevertheless, it held that this constituted sufficient force to make out the elements of robbery. (See, also, Commonwealth v Davis, 23 Ky L Rep 1717, where it was held that larceny is accomplished secretly or by surprise or fraud and that any force which is sufficient to take the property against the owner's will makes out a robbery; Snyder v Commonwealth, 21 Ky L Rep 1538, where the victim was pushed and shoved about by defendant and his accomplice for the purpose of diverting his attention—it was held to be a robbery even though the victim was unaware of his loss at the time; Williams v Commonwealth, 20 Ky L Rep 1850, where the defendant wrenched a pocketbook from the hand of the complainant, who gave it up because defendant was stronger.) The "minority" rule was most recently adopted by the Massachusetts Supreme Court in Commonwealth v Jones (362 Mass 83, 88-89), wherein the following observations were made: "We prefer the Kentucky rule on purse snatching. The majority jurisdiction rule, in looking to whether or not the victim resists * * * wrongly emphasizes the victim's opportunity to defend himself over the willingness of the purse snatcher to use violence if necessary. See Note, 23 J. Cr. Law, 111, 115. Historically, however, the law has singled out the robber from other thieves because of his readiness to inflict bodily injury upon his victims. [Citing Am. Law Inst., Model Penal Code, § 222.1, Comment (Tent. Draft No. 11, 1960).] * * * Clearly, more is involved than in a mere stealthy taking where the victim has no present realization of the theft. See Anderson, Wharton's Criminal Law & Procedure, § 560."

On this record, it is unnecessary for this court to make a

determination as to whether purse snatching, per se, constitutes a robbery. Suffice it to say that there was sufficient evidence to support a jury finding that the victim resisted by clinging to her purse and that the overcoming of this resistance, through the use of the overwhelming momentum of the train, constituted a robbery by any definition of that term.[3]

Even assuming that there was no resistance, the extreme danger created by defendant's method of operation must be classified as such an aggravated form of theft as would constitute a robbery. A robbery is committed "when, in the course of committing a larceny * * * [one] uses or threatens the immediate use of physical force upon another person for the purpose of * * * [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking" (Penal Law, § 160.00, subd 1). In considering what degree of physical force is sufficient to constitute a robbery, it should be borne in mind that the law of robbery, and indeed other forms of aggravated theft, developed "to protect not only against misappropriation [of property] but also against injuries which may result from peculiarly dangerous means devised for accomplishing misappropriation" (Note, 54 Col L Rev 84). "Regardless of the success of the misappropriation, aggravated theft is always accompanied by the possibility of physical or psychic injury to the victim * * * To the extent that the method of perpetration increases the likelihood of the misappropriation or of physical and mental harm to the victim, severer punishments must be meted out" (Note, 54 Col L Rev 84, 109).

■ Defendant's method not only increased his chances of a successful "misappropriation" of property, it was accompanied, as well, by the possibility of severe physical injury to the victim. It could not be predicted whether a bag would be plucked with ease or whether, as here, the victim would resist and be dragged along with the train; nor should it make any difference for the purposes of penal classification. We conclude that the defendant used physical force, by means of the forward momentum of a moving train, to prevent or overcome

---

3. The conductor who saw the incident testified to "a hand * * * pulling her [the victim] down." He further testified that "as the train moved out, she started to move forward" and that "the arm [was] still on her person * * * when she started to stumble". The conclusion is inescapable that the victim was dragged forward by the momentum of the train as she and the defendant engaged in a one-sided tug of war over her purse.

resistance to the taking of Regina Graham's pocketbook (see Penal Law, § 160.00). As a result thereof, his victim suffered injuries which resulted in her death. Accordingly, the judgment convicting defendant of murder should be affirmed (see Penal Law, § 125.25, subd 3).

We have considered the other points raised by defendant on this appeal and have found them to be without merit.

SHAPIRO, J. (dissenting). Defendant has been sentenced to a term of 15 years to life upon a jury verdict convicting him of felony murder.

Upon this appeal he raises four issues. Only one of them, in my opinion, merits discussion, and that is whether, as a matter of fact, the proof was sufficient to establish the underlying felony—attempted robbery—as a predicate for defendant's conviction of felony murder. I do not believe it was.

Felony murder is defined in section 125.25 of the Penal Law, in relevant part, as follows: "3. Acting either alone or with one or more other persons, *he commits or attempts to commit robbery,* burglary, kidnapping, arson, rape in the first degree, sodomy in the first degree, sexual abuse in the first degree, escape in the first degree, or escape in the second degree, and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants" (emphasis supplied). (At the time the crime was committed, there was only one degree of "murder" in the New York Penal Law. At the present time, section 125.25 of the Penal Law is entitled murder in the second degree.)

Robbery is defined in section 160.00 of the Penal Law. That statute provides:

"Robbery is forcible stealing. A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:

"1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

"2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

The facts, briefly stated, show that one Regina Graham,

aged 20, fell off a subway platform and was injured by a moving train at about 12:45 P.M. on November 30, 1970. She died of her injuries 11 days later. The train conductor, Robert Simmons, had just closed the train doors, after looking in both directions of the platform from his cab in the sixth car of the train to make sure the doors were clear. As the train began to move and Simmons glanced to the rear of the train once more, he saw a forearm extended from the train (from between two cars, because the doors were closed), pulling at a young woman, either by her pocketbook *or* her arm. The thief missed his quarry, but the woman began to stumble toward the edge of the platform. Simmons, inside his cab, pulled the emergency cord. One of the passengers on the train, Steven Wiley, gave his name and address to the police. What Wiley had seen was two young men in a rear car of the train. One of the young men (identified by him as the defendant) raced through the car just as the train started to move, opened the door between the cars and closed it behind him. When the train stopped suddenly, he returned and exchanged jackets with his companion. There is no doubt that the defendant is the person who attempted, unsuccessfully, to snatch the decedent's pocketbook.

Although, unfortunately, a death resulted from what defendant did, the undisputed facts in this record reveal no more than an attempted snatch of a pocketbook and not an attempted robbery, as that term is defined in the applicable statutes. Pocketbook snatching constitutes a larceny *(McCloskey v People,* 5 Parker Cr Rep 299), which is not by statutory definition a crime upon which a felony murder charge can be predicated (cf. *People v Woods,* 41 NY2d 279).

I am not persuaded by the ruling of the trial court that the moving train became an element of the physical force applied by the offender so as to bring the defendant's conduct within the statutory definition of an attempted robbery, or of the contention of the People in their brief that the appellant, in relying on the forward momentum of the train to create physical force to assist his theft, was guilty of a robbery. In my opinion, the majority, by sustaining the conviction in this case, is making bad law in a hard case. I would reverse and dismiss the indictment.*

---

* Inasmuch as the defendant was convicted and sentenced more than six years ago, I have not considered whether the conviction should be reduced to the misdemeanor of attempted grand larceny in the third degree.

Suozzi, J. P., and Hawkins, J., concur with Margett, J.; Shapiro, J., dissents and votes to reverse the judgment and dismiss the indictment, with an opinion, in which Cohalan, J., concurs.

Judgment of the Supreme Court, Kings County, rendered May 5, 1972, affirmed.