# United States Court of Appeals
## For the First Circuit

No. 16-1526

UNITED STATES OF AMERICA,

Appellee,

v.

LONNIE BALL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Baldock,* and Kayatta,
Circuit Judges.

David R. Beneman, Federal Public Defender, for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Richard W. Murphy, Acting United States Attorney, and Renée M. Bunker, Assistant United States Attorney, Appellate Chief, were on brief, for appellee.

August 30, 2017

* Of the Tenth Circuit, sitting by designation.

**KAYATTA**, **Circuit Judge**. Defendant Lonnie Ball challenges the district court's enhancement of his sentence under the career offender guideline based on the court's determination that Ball's prior conviction for Pennsylvania second-degree robbery qualifies as a "crime of violence" as defined in § 4B1.2(a) of the U.S. Sentencing Guidelines Manual (U.S.S.G.) (U.S. Sentencing Comm'n 2015).[1] The parties, operating under the assumption that the so-called "residual clause" of the crime of violence definition was void, trained their arguments on the "force clause" of that definition. When intervening developments in the law put the residual clause back in play, we called for supplemental briefing on whether the robbery offense at issue qualifies as a crime of violence under that clause. Unpersuaded by the position Ball takes in his supplemental submission, we find that it does.

**I.**

On November 16, 2015, Ball pled guilty to a single-count indictment that charged him with unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(1). The U.S. Probation Office's presentence report assigned Ball a base offense level of twenty-four, citing one prior conviction that qualified as a "controlled

---

[1] All citations to the sentencing guidelines in this opinion are to the 2015 Guidelines Manual, which became effective on November 1, 2015, and remained in effect at the time of Ball's sentencing.

substance offense" and a 2009 conviction for Pennsylvania second-degree robbery under 18 Pa. Cons. Stat. § 3701(a)(1)(iv) that qualified as a "crime of violence." See U.S.S.G. § 2K2.1(a)(2) (applying a base offense level of twenty-four "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense"). Ball did not dispute that he had been convicted of a controlled substance offense. He challenged, instead, the report's classification of his Pennsylvania robbery conviction as a crime of violence. Pennsylvania defines that offense as "inflict[ing] bodily injury upon another or threaten[ing] another with or intentionally put[ting] him in fear of immediate bodily injury" in the course of committing a theft. 18 Pa. Cons. Stat. § 3701(a)(1)(iv). If Ball is correct that that offense does not fit the guideline's definition of a crime of violence, then the proper base offense level for sentencing purposes would be reduced by four levels. See U.S.S.G. § 2K2.1(a)(4).

The district court ordered the parties to brief whether that robbery offense qualifies as a crime of violence, a term defined in the 2015 Guidelines Manual as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--

- 3 -

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Id. § 4B1.2(a). The district court also heard argument on that question during the sentencing hearing on May 5, 2016. It ultimately decided that the presentence report's designation of the robbery offense as a crime of violence was correct. The district court therefore adopted the report's total offense level of twenty-five, which reflected a base offense level of twenty-four, id. § 2K2.1(a)(2), plus four levels for an obliterated serial number on the firearm Ball possessed, id. § 2K2.1(b)(4)(B), less three levels for acceptance of responsibility, id. § 3E1.1(a)–(b). Had the district court agreed with Ball that the robbery offense did not qualify as a crime of violence, Ball's total offense level would have been twenty-one. See id. § 2K2.1(a)(4).

The total offense level of twenty-five, together with the recommended criminal history category of VI, yielded a guidelines sentencing range of 110 to 137 months, rather than the range of 77 to 96 months that would have applied using the lower total offense level of twenty-one. Id. ch. 5, pt. A (Sentencing Table). The district court lowered the top of the range from 137 to 120 months on account of the statute's ten-year maximum

- 4 -

sentence.  See 18 U.S.C. §§ 922(g)(1), 924(a)(2).  Additionally, because it found that a criminal history category of VI "overrepresent[ed]" Ball's criminal history, the district court granted a departure from category VI to category V, resulting in an adjusted range of 100 to 120 months.  After considering the relevant sentencing factors, the district court varied downward to impose a 96-month sentence, to be followed by three years of supervised release.  Ball timely appealed.

## II.

"[T]here are three ways that an offense can constitute a 'crime of violence'" under the sentencing guidelines as they stood at the time Ball was sentenced.  United States v. Giggey, 551 F.3d 27, 33 (1st Cir. 2008).  First, the offense can satisfy the "force clause" of the crime of violence definition because it "has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).  Second, the offense can be one of the offenses enumerated by name in § 4B1.2(a)(2): "burglary of a dwelling, arson, or extortion, [or an offense that] involves use of explosives."  Third, the offense can satisfy what was then the last clause of § 4B1.2(a)(2) (i.e., the "residual clause") through mechanisms we describe below.[2]

---

[2] The residual clause was eliminated from the guidelines in late 2016.  See United States v. Wurie, No. 15-1395, 2017 WL

- 5 -

In proceedings before the district court, the parties advanced arguments with respect to the force clause only. Their appellate briefing likewise trained on that clause. That the parties submitted no briefing on either the enumerated offenses or the residual clause is unsurprising. The government conceded that the enumerated offenses do not encompass Ball's prior offense. And both parties apparently believed that the residual clause of the career offender guideline was void based on the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), which declared unconstitutionally vague the identically worded residual clause in the Armed Career Criminal Act's definition of a "violent felony," see 18 U.S.C. § 924(e)(2)(B)(ii). Johnson, 135 S. Ct. at 2557.

As it happened, on the same day we heard oral argument in this case, the Supreme Court issued its decision in Beckles v. United States, 137 S. Ct. 886 (2017). The Court held that the advisory guidelines--those under which Ball was sentenced--"are not subject to a vagueness challenge under the Due Process Clause." Id. at 892. Beckles put the residual clause back in play. We

3392673, at *1 n.2 (1st Cir. Aug. 8, 2017) (citing U.S.S.G. App. C Supp., Amend. 798 (effective Nov. 1, 2016)). But that amendment "was not made retroactive," id. at *4, and Ball points to no reason why the non-retroactive change should justify reconsideration of his sentence, which was entered before the change. See id. at *5–6. Accordingly, we apply "the Guidelines Manual in effect on the date that the defendant [wa]s sentenced," U.S.S.G. § 1B1.11(a), the 2015 Guidelines Manual, which contained the residual clause.

therefore ordered supplemental briefing from the parties. Our

order stated as follows:

> In light of Beckles v. United States, 137 S.
> Ct. 886 (2017), and our subsequent decision in
> United States v. Thompson, 851 F.3d 129 (1st
> Cir. 2017) (per curiam), the parties are
> hereby ordered to file . . . simultaneous
> supplemental briefs . . . addressing the
> following question: Whether 18 Pa. Cons.
> Stat. § 3701(a)(1)(iv) qualifies as a "crime
> of violence" under the residual clause of the
> career offender guidelines, including whether
> 18 Pa. Cons. Stat. § 3701(a)(1)(iv) falls
> within the generic definition of "robbery" as
> enumerated in the application note. See
> U.S.S.G. § 4B1.2, cmt. n.1.

Having now reviewed the parties' supplemental briefs, we affirm.

## III.

### A.

Ball devotes the majority of his supplemental brief to

contending that the government has waived reliance on the residual

clause by failing to raise any such argument before the district

court and by making no such argument to this court until after we

invited supplemental briefing. When we called for supplemental

briefing, however, we pointed the parties not only to Beckles but

also to our subsequent decision in United States v. Thompson, 851

F.3d 129 (1st Cir. 2017) (per curiam). In Thompson, as here, the

government had "conceded that Johnson invalidated the career

offender guideline's residual clause." Id. at 131. We nonetheless

held that "[w]e [we]re not bound by the government's concession,

which, while understandable before Beckles, turned out to be incorrect." Id. (footnote omitted). Explaining that an appellate court is not necessarily constrained by "[a] concession by either party in a criminal case as to a legal conclusion," id. (quoting United States v. Sánchez-Berríos, 424 F.3d 65, 81 (1st Cir. 2005)), we disregarded the government's concession because, "in light of Beckles, the proper resolution of this issue is crystal clear," id. (citing United States v. Vega-Ortiz, 425 F.3d 20, 22 (1st Cir. 2005)). By citing Thompson in our order calling for supplemental briefing, we deliberately directed the parties to circuit precedent rejecting a government concession just like the one at issue here.

In his supplemental brief, Ball is unable to offer any reason to distinguish Thompson or its progeny. See United States v. Wurie, No. 15-1395, 2017 WL 3392673, at *2 (1st Cir. Aug. 8, 2017); United States v. Gonsalves, 859 F.3d 95, 114 n.9 (1st Cir. 2017); United States v. Nieves-Borrero, 856 F.3d 5, 8 (1st Cir. 2017). This is not surprising because no sound reason is apparent. We therefore follow Thompson, rejecting the government's concession and excusing its waiver. Furthermore, because neither party seeks remand to the district court, and because the issue at hand presents a purely legal question, see United States v. Tavares, 93 F.3d 10, 16 (1st Cir. 1996) ("Were the [sentencing

- 8 -

issue] a purely legal matter, we might be able to resolve it ourselves, without the need to remand."), we proceed to the merits.

**B.**

We may affirm the district court's sentence if any one of the three ways that an offense can constitute a crime of violence under the 2015 Guidelines Manual applies here. See United States v. Cabrera-Polo, 376 F.3d 29, 31 (1st Cir. 2004). Through our order calling for supplemental briefing, we raised the possibility, following Beckles, that Ball's offense might constitute a crime of violence under the 2015 Guidelines Manual's residual clause. That clause has two mechanisms for bringing an offense within the guideline's definition of a crime of violence, and we referenced both in our order. First, the residual clause covers offenses "involv[ing] conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). Second, it serves as the "textual hook" for several examples of crimes of violence listed in an application note in the commentary to § 4B1.2. See United States v. Soto-Rivera, 811 F.3d 53, 60 (1st Cir. 2016). In other words, the residual clause incorporates the listed examples into § 4B1.2(a) and allows the sentencing court to essentially treat them as additional enumerated offenses. The application note's listed examples include "robbery." See U.S.S.G. § 4B1.2, cmt. n.1. Thus, under the analytical framework set forth in Taylor v. United States, 495

U.S. 575 (1990), Ball's prior robbery conviction qualifies as a crime of violence under the residual clause if Pennsylvania law defines the robbery offense in a way that "substantially corresponds" to the definition of generic robbery. Id. at 602; see also United States v. Castro-Vazquez, 802 F.3d 28, 38 n.7 (1st Cir. 2015) (citing United States v. Ramírez, 708 F.3d 295, 302 n.8 (1st Cir. 2013)) (explaining that we apply Taylor's framework not only to offenses enumerated in the guideline but also to offenses listed in the application note).

Charged with the burden of establishing that Ball's conviction was a conviction for a crime of violence as defined in the 2015 Guidelines Manual, see United States v. Dávila-Félix, 667 F.3d 47, 55 (1st Cir. 2011), the government argues in its supplemental brief that both of the residual clause's mechanisms apply here and that either one independently justifies the career offender enhancement. According to the government, the robbery offense at issue--defined as theft that includes inflicting bodily injury, threatening another with immediate bodily injury, or intentionally putting another in fear of immediate bodily injury--"involves conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2), either because the robber may inflict such injury, or because those perceiving the robber's actions may respond in a way that risks such injury. That definition of robbery also substantially

corresponds to the definition of generic robbery, says the government, because both definitions involve the taking of property by force or by intimidation. The government's arguments are well-taken, as evidenced by the fact that, apart from Ball's waiver argument, he can marshal in the supplemental brief filed by his able counsel no persuasive refutation of the government's position.

As to the first possibility, that 18 Pa. Cons. Stat. § 3701(a)(1)(iv) qualifies as a crime of violence because it "involves conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2), Ball puts forward only a bald assertion that "[f]ear does not equate to a potential risk of physical injury." The correctness of this assertion hardly seems self-evident. To the contrary, it seems quite reasonable to posit that, in the ordinary case, "intentionally put[ting] [another] in fear of immediate bodily injury," 18 Pa. Cons. Stat. § 3701(a)(1)(iv), poses "a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2). See Wurie, 2017 WL 3392673, at *4-5 (citing James v. United States, 550 U.S. 192, 208 (2007), overruled on other grounds by Johnson, 135 S. Ct. 2551).

As to the second possibility we outlined in our order, that 18 Pa. Cons. Stat. § 3701(a)(1)(iv) qualifies as a crime of violence because it substantially corresponds to the definition of

- 11 -

generic robbery, Ball offers little more. He agrees with the government that generic robbery involves a taking by force or by intimidation, and then claims that "[a] taking based on intentional fear of immediate bodily injury is non-generic." Under the generic definition accepted by both parties, the robbery statute at issue is clearly compatible. Pennsylvania law recognizes that a defendant can commit robbery in violation of the statute not only through force but also through "aggressive actions that threaten . . . bodily injury." Commonwealth v. Hurd, 407 A.2d 418, 420 (Pa. Super. Ct. 1979); see, e.g., Commonwealth v. Swartz, 484 A.2d 793, 793–94 (Pa. Super. Ct. 1984); Commonwealth v. Davis, 459 A.2d 1267, 1272 (Pa. Super. Ct. 1983). To the extent that Pennsylvania's definition of the offense at issue differs from the generic definition in any way, Pennsylvania's definition would appear to be narrower in the sense that it defines the offense in terms of "bodily injury." See United States v. Lockley, 632 F.3d 1238, 1243–45 (11th Cir. 2011) (rejecting that distinction as basis for finding that robbery offense at issue was not generic). This presents "no problem, because the conviction necessarily implies that the defendant has been found guilty of all the elements of [the generic offense]." Taylor, 495 U.S. at 599. So for this reason alone, Ball fails in his attempt to parry the government's argument that the career offender enhancement applies.

**IV.**

For the foregoing reasons, we find more compelling the government's argument that Ball's prior conviction for robbery under 18 Pa. Cons. Stat. § 3701(a)(1)(iv) falls within the career offender guideline's residual clause in the 2015 Guidelines Manual. We therefore <u>affirm</u> Ball's sentence.