# United States Court of Appeals
## For the First Circuit

No. 17-1011

UNITED STATES OF AMERICA,

Appellant,

v.

VINCENT STEED,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

Richard W. Murphy, Acting United States Attorney, and Julia
M. Lipez, Assistant United States Attorney, on brief for appellant.
Molly Butler Bailey and Strike, Gonzalez & Butler Bailey on
brief for appellee.

January 12, 2018

**BARRON**, **Circuit Judge**. In this appeal, the government challenges the 2016 sentence that Vincent Steed received for his conviction -- following his guilty plea -- for possession with intent to distribute Cocaine Base and Heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). The District Court, in sentencing Steed, concluded that he did not qualify as a "career offender" under the United States Sentencing Guidelines and thus was not subject to the sentencing enhancement that otherwise would apply. The District Court then calculated Steed's guidelines sentencing range on that basis, and sentenced Steed to a prison term of 63 months, which was at the high end of the resulting guidelines sentencing range.

The government now contends that the District Court erred in concluding that Steed did not qualify as a "career offender" under the Sentencing Guidelines and thus that the District Court sentenced him based on an unduly low guidelines sentencing range. Accordingly, the government argues that Steed's sentence must be vacated so that Steed may be re-sentenced.

As has become common in cases of this type, we must address a number of complexities regarding the particularities of state law to resolve the issues on appeal. And, as has also become common in cases of this type, such complexities of state law in turn raise additional questions -- knotty in themselves -- about the requirements of the federal provision that seeks to identify

- 2 -

those offenders whose past violence warrants the imposition of an enhanced sentence. After working our way through these questions, we conclude that the government has not identified a sufficient basis for vacating the sentence. Accordingly, we affirm the judgment below.

## I.

On June 27, 2016, in the United States District Court for the District of Maine, Steed pleaded guilty to violating 21 U.S.C. § 841(a)(1), (b)(1)(C). The Presentence Investigation Report ("PSR") prepared by the Probation Office recommended that Steed be classified as a "career offender" under § 4B1.1 of the United States Sentencing Guidelines, as set forth in the 2015 version of the United States Sentencing Guidelines Manual.

That guideline defines a "career offender" to include those defendants who have two prior convictions, whether for a "controlled substance offense," U.S. Sentencing Guidelines Manual § 4B1.1(a) (U.S. Sentencing Comm'n 2015), any "crime of violence," id. § 4B1.1(a), or any combination thereof. A "crime of violence" is defined as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that[] (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

- 3 -

Id. § 4B1.2(a).

The first subpart of the language just quoted ("has as an element the use, attempted use, or threatened use of physical force against the person of another") is commonly referred to as the "force clause" of the "crime of violence" definition. See United States v. Ball, 870 F.3d 1, 3 (1st Cir. 2017). The final clause of the second subpart ("otherwise involves conduct that presents a serious potential risk of physical injury to another") is known as the "residual clause" of that definition. Id.

The PSR based the conclusion that Steed was a career offender under the guideline on his conviction in 2012 for two counts of drug trafficking under Maine law and his conviction in 2000 for attempted robbery in the second degree under New York law. Having determined that the drug trafficking and robbery convictions each qualified as predicate offenses under the career offender guideline, the PSR applied the career offender sentencing enhancement, which resulted in the PSR identifying Steed's total offense level under the guidelines to be 29. The PSR also determined Steed's criminal history category to be VI. In consequence, the PSR calculated Steed's sentencing range under the guidelines to be 151 to 188 months of imprisonment.

The District Court thereafter held a sentencing hearing. The District Court determined at the hearing that the variant of second-degree robbery under New York law that Steed had been

- 4 -

convicted of attempting to commit did not have as an element the use of "violent force" under <u>Johnson</u> v. <u>United States</u>, 559 U.S. 133, 140 (2010) (<u>Johnson I</u>).  Thus, the District Court reasoned that Steed had been convicted of an offense that did not fall within the force clause of the career offender guideline's definition of a "crime of violence."  The District Court then bypassed the question whether that offense fell within the residual clause of that guideline's definition of a "crime of violence" because the government conceded that, after <u>Johnson</u> v. <u>United States</u>, 135 S. Ct. 2551 (2015) (<u>Johnson II</u>), the residual clause was unconstitutionally vague.  Accordingly, the District Court concluded that the career offender enhancement did not apply to Steed, as he had only one prior conviction that qualified as a conviction for a predicate offense under the career offender guideline -- namely, his conviction under Maine law for two counts of drug trafficking, which was a qualifying "controlled substance" offense.

Partly in consequence of this ruling, the District Court determined that Steed's total offense level was 19, rather than 29, as the PSR had stated.  The District Court also determined that, as the PSR had stated, Steed's criminal history category was VI.  The District Court then accepted the government's recommended two-level reduction of Steed's total offense level.  The District Court thus calculated Steed's guidelines sentencing range to be 51

to 63 months of imprisonment. The District Court then sentenced Steed to a sentence at the high end of that range -- 63 months of imprisonment.

The parties do not dispute that Steed's conviction for two counts of drug trafficking under Maine law qualifies as a conviction for a "controlled substance" offense under the career offender guideline. See U.S.S.G. § 4B1.2(b). The dispute before us therefore concerns only whether the government is right in contending that, contrary to the District Court's ruling, Steed's conviction for attempted second-degree robbery under New York law qualifies as a predicate conviction under the career offender guideline as a "crime of violence." For, if the government is right on that point, then Steed is subject to the career offender enhancement under that guideline.

## II.

We begin with the government's contention that Steed's 2000 conviction for attempted second-degree robbery under New York law is for an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another" and thus is for an offense that the force clause of the career offender guideline's definition of a "crime of violence" encompasses. U.S.S.G. § 4B1.2(a)(1). Our review is de novo. United States v. Almenas, 553 F.3d 27, 31 (1st Cir. 2009).

**A.**

In assessing whether a conviction qualifies as a predicate conviction under the force clause of the career offender guideline's definition of a "crime of violence," we apply what is known as the "categorical approach." United States v. Dávila-Félix, 667 F.3d 47, 55-56 (1st Cir. 2011) (internal quotation marks omitted). Under that approach, we consider "the statutory definition of the offense in question, as opposed to the particular facts underlying the conviction." Id. at 56 (quoting United States v. Piper, 35 F.3d 611, 619 (1st Cir. 1994)); see also Taylor v. United States, 495 U.S. 575, 602 (1990). We undertake this analysis by focusing on the elements of the offense. Dávila-Félix, 667 F.3d at 57. If the elements of the state statute of conviction "encompass[] only conduct that constitutes a predicate offense," then the conviction qualifies as a predicate conviction under the force clause of the career offender guideline's "crime of violence" definition. Id. at 56.

In cases where the state criminal statute at issue "sets out one or more elements of the offense in the alternative[,]" such that the offense is divisible into more than one offense, we must first identify the specific offense for which the defendant was convicted. Descamps v. United States, 133 S. Ct. 2276, 2281 (2013); United States v. Tavares, 843 F.3d 1, 10 (1st Cir. 2016), reh'g denied, 849 F.3d 529 (1st Cir. 2017). The parties agree

that Steed's conviction was for attempting the type of second-degree robbery that § 160.10(2)(a) of the New York Penal Law sets forth. Accordingly, we must determine whether Steed's conviction for that offense categorically qualifies as a conviction for a "crime of violence" under the force clause of the career offender guideline's definition of that term.

**B.**

New York Penal Law § 160.00 sets forth the general definition of the offense of robbery by providing that:

> A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of . . . [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or . . . [c]ompelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

Section 160.10 then sets forth four variants of robbery in the second degree. N.Y. Penal Law § 160.10. Section 160.10(2)(a), which is the variant that the parties agree is relevant here, defines that offense to occur when "when [someone] forcibly steals property," and "[i]n the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: . . . [c]auses physical injury to any person who is not a participant in the crime." N.Y. Penal Law § 160.10(2)(a). Finally, New York defines an "attempt" as

occurring when someone, "with intent to commit a crime . . . engages in conduct which tends to effect the commission of such crime[.]"  N.Y. Penal Law § 110.00.

We set to one side the fact that Steed was convicted of attempting to commit second-degree robbery under § 160.10(2)(a). Doing so allows us to focus on whether this variant of second-degree robbery is an offense that falls under the force clause. For, if that offense does not fall under that clause, then the offense of attempting to commit that offense does not either.

We begin our review by following the lead of the parties and considering our recent precedent in United States v. Mulkern, 854 F.3d 87 (1st Cir. 2017).  The parties recognize that Mulkern considered a similar issue to the one that we confront here, even though that case did not concern a potential application of the career offender guideline.

Mulkern concerned a defendant's contention that his prior state law conviction under Maine law for a robbery offense did not qualify as a predicate conviction under the Armed Career Criminal Act (ACCA).  Id. at 92.  Mulkern's analysis of ACCA is relevant here because of that statute's similarities with the career offender guideline.

ACCA penalizes those who possess firearms if they have three or more prior convictions for a "violent felony."  18 U.S.C. § 924(e)(1).  Moreover, ACCA's definition of a "violent felony,"

id. § 924(e)(2)(B), contains a force clause that is worded nearly identically to the force clause of the career offender guideline's definition of a "crime of violence." Thus, as we have explained before, precedents that, like Mulkern, construe the force clause in the definition of a "violent felony" under ACCA are directly relevant to the analysis that we must undertake in construing the force clause of the career offender guideline's definition of a "crime of violence." See United States v. Hart, 674 F.3d 33, 41 n.5 (1st Cir. 2012) (explaining that, because ACCA's definition of a "violent felony" is "almost identical[]" to the Sentencing Guidelines' definition of a "crime of violence," we have held that "'decisions construing one term inform the construction of the other'") (quoting United States v. Holloway, 630 F.3d 252, 254 n.1 (1st Cir. 2011)).

We explained in Mulkern that the robbery offense under Maine law for which the defendant had been convicted in that case required that the defendant had "use[d] physical force on another with the intent . . . (1) to prevent or overcome resistance to the taking of the property, or to the retention of the property" or "(2) to compel the person in control of the property to give it up or to engage in other conduct which aids in the taking or carrying away of the property." 854 F.3d at 91 (quoting Me. Stat. tit. 17-A, § 651(1)). We then held that neither variant of this robbery offense under Maine law qualified under the force clause of ACCA's

- 10 -

definition of a "violent felony" because of the way that Maine defined the robbery offense.  Id. at 93-94.

In so holding, we relied on the decision of Maine's highest court in Raymond v. State, 467 A.2d 161, 165 (Me. 1983). There, the Maine Law Court explained that the drafters of Maine's robbery statute, Me. Stat. tit. 17-A, § 651, "made a conscious decision that any physical force with the intent specified in" the relevant portion of the statute that defined that offense sufficed to satisfy the force element of that offense.  Raymond, 467 A.2d at 165 (emphasis in original).  The Maine Law Court concluded that, in light of this statutory definition of the offense of robbery, "a case where the victim was at the time unaware of a stealthy taking of her purse" did not constitute a robbery, but that a purse "snatching" effected with the requisite intent did.  Id. at 164. Raymond explained that "the mere act of snatching a purse from the hand of a victim is a sufficient act of physical force required for robbery," because of the amount of physical force that the act of "snatching" necessarily requires the perpetrator to use.  Id.

Raymond relied for this conclusion on the reasoning of Commonwealth v. Jones, 283 N.E.2d 840 (Mass. 1972).  In that case, the Massachusetts Supreme Judicial Court had explained, in holding that a purse snatching constituted a robbery under Massachusetts law, that "where, as here, the actual force used is sufficient to produce awareness, although the action may be so swift as to leave

- 11 -

the victim momentarily in a dazed condition, the requisite degree of force is present to make the crime robbery." Id. at 845.

In light of Raymond, we concluded in Mulkern that "Maine's highest court recognizes that 'any physical force' suffices to satisfy the 'physical force' element" of the offense of robbery, because Maine defines that offense's physical force requirement to be satisfied by a use of physical force that suffices to produce mere awareness in the victim. Mulkern, 854 F.3d at 93 (quoting Raymond, 467 A.2d at 165) (emphasis omitted). We thus concluded that the robbery offense at issue could, under Maine law, be satisfied by proof of "'the mere act of snatching a purse from the hand of a victim' . . . even if the robber never made 'direct bodily contact' with the victim." Id. (quoting Raymond, 467 A.2d at 164, 165).

On that basis, we then concluded that the force clause of ACCA's definition of a "violent felony" did not encompass the offense of robbery in Maine that was at issue. Id. at 93-94. We reasoned that such a minimal use of force as would be required merely to snatch a purse was too slight a use of force to constitute force "'capable of causing physical pain or injury'" under Johnson I. Id. at 93-94 (quoting Johnson I, 559 U.S. at 140); see also Johnson I, 559 U.S. at 140-41 ("We think it clear that in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force -- that is, force capable of

- 12 -

causing physical pain or injury to another person. . . . When the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer."); accord United States v. Ramos-González, 775 F.3d 483, 504 (1st Cir. 2015).

Against this precedential background, we turn back, then, to the question at issue here: whether the type of robbery that Steed was convicted of attempting to commit -- a variant of second-degree robbery under New York law -- falls within the force clause of the career offender guideline's definition of a "crime of violence." The answer to this key question is one that concerns the state of New York law as it stood at the time that Steed was convicted of attempting to commit that crime, which was in 2000. That is so because we apply an historical approach to determine whether an offense categorically matches the elements of the force clause of the definition of a "crime of violence" under the career offender guideline. After all, that is the approach that we use in construing the force clause of the definition of a "violent felony" under ACCA, United States v. Faust, 853 F.3d 39, 57 (1st Cir. 2017) (holding that categorical analysis under ACCA must be conducted as to the state of the law at the time of the defendant's conviction), and, as we have explained, our precedents concerning the proper construction of ACCA's force clause inform our construction of the career offender guideline's force clause as well, see Hart, 674 F.3d at 41 n.5.

- 13 -

c.

The government contends that a review of the relevant New York state court precedent shows that § 160.10(2)(a) falls within the force clause of the career offender guideline's definition of a "crime of violence" because that offense requires more than the use or threatened use of "any physical force." Mulkern, 854 F.3d at 93. And, the government contends, that conclusion is supported by the precedent that shows that New York law -- unlike Maine law, as Mulkern had held -- does not make a mere purse snatching a robbery in the second degree under § 160.10(2)(a), and that this was the case, presumably, even as of 2000, when Steed was convicted.

The government relies for this assertion chiefly on a relatively recent New York Court of Appeals case, People v. Jurgins, 46 N.E.3d 1048 (N.Y. 2015). We are, of course, bound by how a state's highest court defines a crime in that state. See Tavares, 843 F.3d at 14. But, even setting aside the fact that Jurgins was decided long after Steed's conviction, we do not find Jurgins to support the government's contention about the state of New York law at the time of that conviction. Jurgins simply assumed, based on the representations of the parties in that case, that a purse snatching would not qualify as a robbery under New York law. 46 N.E.3d at 1053. For that reason, Jurgins makes no holding with respect to the issue that we must resolve.

- 14 -

The government does also point to several New York intermediate appellate court precedents that pre-date Steed's conviction. These cases address the conduct that may qualify as either second-degree or third-degree robbery under New York law.

State intermediate appellate court precedents are certainly potentially relevant to our present inquiry. But the precedents on which the government relies do not suffice to support its contention. Those cases find there to have been a robbery under New York law based on the use of seemingly greater force than was necessary to prove robbery under the Maine robbery statute considered in Mulkern. See, e.g., People v. Bennett, 631 N.Y.S.2d 834, 834 (N.Y. App. Div. 1995) (creation of a "human wall" was sufficient force for second-degree robbery); People v. Lee, 602 N.Y.S.2d 138, 139 (N.Y. App. Div. 1993) (a "bump" and "forcibly block[ing]" the victim's pursuit was sufficient force for second-degree robbery); see also People v. Safon, 560 N.Y.S.2d 552, 552 (N.Y. App. Div. 1990) (tugging money was sufficient force for third-degree robbery); cf. United States v. Moncrieffe, 167 F. Supp. 3d 383, 404-05 (E.D.N.Y.), appeal withdrawn, No. 16-965 (July 31, 2016) (discussing cases). But, even if the government is right that bumping, tugging, and forming a wall constitute conduct that falls within the force clause of the provision of the career offender guideline that defines a "crime of violence," but see United States v. Childers, 2017 WL 2559858 at 10 (D. Me. June 6,

2017); <u>Moncrieffe</u>, 167 F. Supp. 3d at 406; <u>United States</u> v. <u>Johnson</u>, 220 F. Supp. 2d 264, 272 (E.D.N.Y. 2016), these precedents do not rule out the possibility that less significant uses or threatened uses of force, including purse snatching, could have been used to commit a robbery under § 160.10(2)(a) as of the time of Steed's 2000 conviction. Thus, these precedents, in and of themselves, do not suffice to support the government's cause.

As it happens, there are precedents that the government does not reference but that pre-date Steed's 2000 conviction and that directly address whether the act of snatching property falls within New York's definition of robbery either in the second or the third degree. We thus must consider these precedents. If they indicate that, as of 2000, a snatching may have constituted a second-degree robbery under § 160.10(2)(a), then Steed's conviction would not be one for an offense that falls within the force clause. For there need be only "'a realistic probability . . . that the [state] would apply its statute . . .'" to include that minimal conduct in order for the state statutory offense to fall outside the force clause. <u>United States</u> v. <u>Ellison</u>, 866 F.3d 32, 38 (1st Cir. 2017) (quoting <u>Gonzales</u> v. <u>Duenas-Alvarez</u>, 549 U.S. 183, 193 (2007)) (alteration in original).

A number of these precedents do favor the government's position that snatching does not constitute robbery in the second degree under § 160.10(2)(a) and did not do so prior to Steed's

- 16 -

conviction. See People v. Middleton, 623 N.Y.S.2d 298 (N.Y. App. Div. 1995) (holding that a purse snatching where the victim was not "intimidated, knocked down, struck, or injured" did not constitute third-degree robbery); People v. Chessman, 429 N.Y.S.2d 224, 227 (N.Y. App. Div. 1980) (concluding that a purse snatching where the victim "did not feel anything on her body" would not constitute third-degree robbery); People v. Davis, 418 N.Y.S.2d 127, 128 (N.Y. App. Div. 1979) (modifying judgment of third-degree robbery where there was no evidence the victim was in danger or saw the defendant approach her). But, not all of them do. In particular, People v. Lawrence, 617 N.Y.S.2d 769 (N.Y. App. Div. 1994), suggests that, at least as of 1994, New York third-degree robbery included purse snatching.

Lawrence held that the defendant committed a robbery in the third degree in "snatching" a purse because the court was "'not persuaded that [the] defendant engaged in a nonphysical, unobtrusive snatching' of the victim's purse." Id. at 770 (quoting People v. Rivera, 554 N.Y.S.2d 115, 116 (N.Y. App. Div. 1990)) (emphasis added). Lawrence indicates that a snatching not unlike one that would qualify as a robbery under the statute considered in Mulkern, 854 F.3d at 93, could be considered physical and obtrusive enough to constitute a robbery in New York, at least in the third degree, even if a mere "stealthy taking," see Raymond, 467 A.2d at 164, can never be a robbery. After all, although such

- 17 -

a snatching would involve no bodily contact with the victim, it could involve the use of just enough force to "produce awareness, although the action may be so swift as to leave the victim momentarily in a dazed condition."  Mulkern, 854 F.3d at 92-93 (citing Jones, 283 N.E.2d at 845).

Moreover, in People v. Santiago, 402 N.E.2d 121 (N.Y. 1980), which was decided more than a decade before Lawrence, an intermediate appellate court considered whether a defendant who was on a moving train and had snatched a purse from a victim standing on a subway platform had thereby committed a robbery in the second degree under § 160.10(2)(a).  People v. Santiago, 405 N.Y.S.2d 752, 753 (N.Y. App. Div. 1978) aff'd, 402 N.E.2d at 121. In the course of addressing that issue, the intermediate appellate court canvassed the relevant precedents in New York and other states -- including the decision by the Massachusetts Supreme Judicial Court in Jones on which the Maine Law Court in Raymond had relied in finding a purse snatching to constitute a robbery. Santiago, 405 N.Y.S.2d at 757; see Raymond, 467 A.2d at 164 (citing Jones, 283 N.E.2d at 845).  That court concluded from this review that it appeared to be an open question under New York law whether "purse snatching, per se, constitutes a robbery" under New York law.  Santiago, 405 N.Y.S.2d at 757.

That court ultimately determined that there was no need to resolve that issue definitively because "there was sufficient

- 18 -

evidence to support a jury finding that the victim resisted by clinging to her purse and that the overcoming of this resistance, through the use of the overwhelming momentum of the train, constituted a robbery by any definition of that term." Id. And, on appeal, the New York Court of Appeals affirmed the intermediate appellate court's ruling in a one paragraph decision that also did not resolve the issue of whether purse snatching per se constitutes a robbery. Santiago, 402 N.E.2d at 121. But, in light of the intermediate appellate court's opinion, it appears that, as of the time of Santiago, it was an open question under New York law as to whether second-degree robbery under § 160.10(2)(a) encompassed purse snatchings like those that Maine counts as robberies.

To be sure, neither the third-degree robbery offense at issue in Lawrence nor the robbery offense at issue in Mulkern required, as second-degree robbery under § 160.10(2)(a) does, that the defendant or another participant in the crime "[i]n the course of the commission of the crime or of immediate flight therefrom . . . [c]ause[] physical injury to any person who is not a participant in the crime." N.Y. Penal Law § 160.10(2)(a). And the government contends that this injury requirement means that this variant of second-degree robbery in New York on its face requires the use of more force (or threatened force) than a robbery offense like the one at issue in Mulkern, which could be committed by a mere snatching.

But, it appears that, at least prior to Steed's 2000 conviction, this injury requirement would not in and of itself have ruled out a snatching from qualifying as a robbery in the second degree under § 160.10(2)(a). A 1997 intermediate appellate court precedent from New York had ruled that an injury that occurred when the victim of the offense fell while chasing the perpetrator satisfied the injury requirement under § 160.10(2)(a), as long as such injury could be "foreseen as being reasonably related to the acts of the accused." People v. Brown, 653 N.Y.S.2d 301, 303 (N.Y. App. Div. 1997). That is significant because Lawrence indicated that, as of 2000, a snatching that engendered awareness of the theft in the victim constituted a robbery in the third degree. See Lawrence, 617 N.Y.S.2d at 770. It thus would appear that such a snatching, by producing awareness, would have made it reasonably foreseeable that the victim would have given chase and thus that any resulting injury that victim suffered while doing so would have been reasonably foreseeable. As a result, the injury requirement would not appear to have precluded snatchings from constituting robberies under § 160.10(2)(a), at least as of the time of Steed's conviction, if, as Lawrence indicates, such snatchings would otherwise have constituted robberies under that provision. And that conclusion would be consistent with, though not required by, the intermediate appellate court decision in Santiago. 405 N.Y.S.2d at 757.

Accordingly, as we read the relevant New York precedents, there is a realistic probability that Steed's conviction was for attempting to commit an offense for which the least of the acts that may have constituted that offense included "purse snatching, per se." Santiago, 405 N.Y.S.2d at 757. As Mulkern held that such conduct falls outside the scope of the nearly identically-worded force cause at issue there, Mulkern, 854 F.3d at 93-94, we cannot say that, under the categorical approach, Steed's conviction was for an offense that the force clause of the career offender guideline's definition of a "crime of violence" encompasses. We note in this regard that other courts have held that the force clause fails to encompass second-degree robbery in New York. Childers, 2017 WL 2559858 at 10; Moncrieffe, 167 F. Supp. 3d at 406; Johnson, 220 F. Supp. 3d at 272. We thus see no error in the District Court's conclusion that Steed's conviction was not for an offense that falls within the force clause of § 4B1.2(a) of the United States Sentencing Guidelines.

**III.**

We turn, then, to the government's alternative argument. Here, the government contends that Steed's conviction was for an offense that, even if not covered by the force clause of the career offender guideline's definition of a "crime of violence," is covered by that definition's residual clause. U.S.S.G. § 4B1.2(a)(2). But, we do not agree.

- 21 -

## A.

As an initial matter, Steed argues that the government waived this argument when it conceded that the residual clause was unconstitutional under Johnson II. As the government points out, however, there has been a "significant change[] in the legal landscape" since Steed's sentencing. Shortly after the District Court sentenced Steed, the Supreme Court decided Beckles v. United States, 137 S. Ct. 886 (2017). In that case, the Court held that the residual clause of the career offender guideline's definition of "crime of violence" -- at least insofar as the career offender guideline was no longer mandatory -- was not unconstitutionally vague. Id. at 892. And, in the wake of Beckles, as the government also notes, we have repeatedly rejected the argument that the government may not invoke the residual clause to argue that a defendant's prior conviction qualifies as a "crime of violence" under the career offender guideline merely because the government conceded prior to Beckles that the residual clause was unconstitutionally vague under Johnson II. See Ball, 870 F.3d at 3; United States v. Thompson, 851 F.3d 129, 131 (1st Cir. 2017) (per curiam); United States v. Gonsalves, 859 F.3d 95, 114 n.9 (1st Cir. 2017) ("Although the government conceded in its brief that the Guidelines' residual clause was unconstitutionally vague, this court is not bound by the government's concession, which,

while understandable before Beckles, turned out to be incorrect." (internal citation omitted)).

There is a wrinkle, however. Each of the post-Beckles cases in which we declined to hold the government to its earlier concession concerned an appeal by the defendant who was challenging his sentence for being too harsh. Here, by contrast, the government brings the appeal, and the government does so in order to subject the defendant to a more severe sentence than he had received. But even if we assume that, notwithstanding this wrinkle, the government is not bound by its concession below, the government's argument still fails under the demanding standard of review that the government concedes that we must apply. In that regard, we note that, ordinarily, the question of whether a conviction is for a "crime of violence" under the residual clause is one of law, for which our review would be de novo when the issue has been properly preserved below. See United States v. Soto-Rivera, 811 F.3d 53, 56 (1st Cir. 2016). But, here, the government asks us to review the question only for plain error because of its pre-Beckles concession that the residual clause was unconstitutionally vague.

Given the government's concession regarding the proper standard of review and our general rule that "a party who neglects to call a looming error to the trial court's attention" is subject to plain error review, United States v. Sánchez-Berríos, 424 F.3d

65, 73 (1st Cir. 2005), we apply the plain error standard of review. Accordingly, the government faces the "onerous burden" of showing "(1) that an error occurred (2) which was clear and obvious and which not only (3) affected the [party's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Ríos-Hernández, 645 F.3d 456, 458, 462 (1st Cir. 2011) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

Significantly, as the Court explained in United States v. Olano, 507 U.S. 725 (1993), plain error review:

> [I]s permissive, not mandatory. If the forfeited error is plain and affects substantial rights, the court of appeals has authority to order correction, but is not required to do so . . . . a plain error affecting substantial rights does not, without more, satisfy the [fourth prong of the plain error test], for otherwise the discretion afforded by [plain error review] would be illusory.

Id. at 735-37 (internal citations and alterations omitted). And, we conclude, the government has failed to make the required showing under the fourth prong of the plain error standard. Accordingly, we conclude that the government's argument under the residual clause fails.

**B.**

The parties start with the first two prongs of the plain error standard and vigorously dispute whether it is a clear or obvious error to conclude that the residual clause of the career

- 24 -

offender guideline's definition of a "crime of violence" does not encompass an attempt to commit this type of second-degree robbery under New York law. The parties do so chiefly by contesting whether the offense of robbery at issue in this case matches the generic definition of robbery, as robbery is one of the offenses listed in the Application Note to the career offender guideline. U.S.S.G. § 4B1.2, comment. (n.1); see also Ball, 870 F.3d at 5 (holding that the offense listed in the Application Note may be treated "as additional enumerated offenses").[1]

We do not need to resolve this dispute, however. In order to meet the plain error standard, the government must show that the error, in addition to being clear or obvious, affected the government's substantial rights -- prong three -- and "seriously impaired the fairness, integrity, or public reputation of judicial proceedings" -- prong four. Ríos-Hernández, 645 F.3d at 462. But, the government does not expressly address either the third or fourth prongs of the plain error standard. And even if we assume that the government has impliedly satisfied the third prong by identifying the significant difference in the sentencing range that it contends should have been applied relative to the one that was applied, the government's failure to make any express

---

[1] The parties also dispute whether New York's definition of attempt falls within the generic definition of attempt.

- 25 -

argument as to the fourth prong of the plain error standard is more problematic.

We are aware of no precedent in which we have addressed whether a sentencing error that favors the defendant, if not corrected so that a much harsher sentence may be imposed, would impair the "fairness, integrity, or public reputation of judicial proceedings." Id. Some courts of appeals have said that "sentencing errors raised by the government on appeal require correction because failure to correct such errors may damage the reputation of the judicial system by allowing district courts to sentence without regard to the law." United States v. Gordon, 291 F.3d 181, 194 (2d Cir. 2002) (citing United States v. Barajas-Nunez, 91 F.3d 826, 833 (6th Cir. 1996)). Another has looked to the difference in the length of the sentence imposed and the correct sentence to determine whether that difference is significant enough to create a "miscarriage of justice" if the error is not corrected. United States v. Posters 'N' Things Ltd., 969 F.2d 652, 663 (8th Cir. 1992), aff'd 511 U.S. 513 (1994). And the Fifth Circuit has declined to correct even clear and obvious errors when "refusal to remedy the error would provide a future incentive to the government to raise all available arguments below." Gordon, 291 F.3d at 194 (citing United States v. Garcia-Pillado, 898 F.2d 36, 39-40 (5th Cir. 1990)); United States v. Rodriguez, 15 F.3d 408, 416-17 (5th Cir. 1994).

But, regarding which standard we should apply, the government makes no argument at all. Nor does the government argue why, under whichever test we might apply, a decision to let this sentence stand -- following the government's express concession as to its lawfulness below -- would impair the "fairness, integrity, or public reputation of judicial proceedings," Ríos-Hernández, 645 F.3d at 462, such that remand so that a new and harsher sentence may be imposed is required.

Given the defendant's interest in repose that is implicated, and the fact that our refusal to permit resentencing here appears unlikely to be the precipitating cause for the government to decline to make concessions based on its own best guess (wrong though it may turn out to be) as to what the Constitution requires, we do not see how the government could be said to have satisfied its burden under the fourth prong by not even addressing it. Thus, we hold that the government has failed to meet its burden of showing plain error by failing -- in a situation in which the claimed sentencing error does not obviously impair the fairness, integrity, or public reputation of the underlying judicial proceeding -- to make any argument as to how the fourth prong of that demanding standard is met. See United States v. Savarese, 385 F.3d 15, 22-23 (1st Cir. 2004) (rejecting defendant's sentencing challenge where defendant had not raised the issue below and had not met the fourth prong of the plain error

test on appeal); <u>see also</u> <u>United States</u> v <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) (holding that undeveloped arguments are waived).

## IV.

Accordingly, the sentence is **<u>affirmed</u>**.