**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 17-4690

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

EDDIE DEAN FLUKER,

        Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Abingdon. Michael F. Urbanski, Chief District Judge. (1:92-cr-00031-MFU-1)

Argued: May 8, 2018                    Decided: June 5, 2018

Before KING, AGEE, and HARRIS, Circuit Judges.

Vacated and remanded by published opinion. Judge Agee wrote the opinion, in which Judge King and Judge Harris joined.

**ARGUED:** Christine Madeleine Lee, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant. Jean Barrett Hudson, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Larry W. Shelton, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant. Thomas T. Cullen, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

AGEE, Circuit Judge:

Following a successful 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence, Eddie Dean Fluker was resentenced to 308 months' imprisonment. Fluker appeals, arguing principally that the district court improperly designated him as a career offender under the 2016 *United States Sentencing Guidelines Manual*, and that this incorrect designation led to the further error of applying the wrong version of the Guidelines Manual to determine his Guidelines range. He maintains that this procedural sentencing error entitles him to resentencing. We agree with Fluker, and for the reasons set out below, vacate his sentence and remand for resentencing.

I.

In 1992, Fluker was convicted of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 1); carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 2); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 3) (collectively "Virginia convictions"). Fluker was sentenced as an armed career criminal under the residual clause of the Armed Career Criminal Act ("ACCA"). *See* 18 U.S.C. § 924(e)(2)(B)(ii). As an armed career criminal, Fluker was subject to a mandatory minimum 15-year sentence, as well as to heightened penalties under the then-mandatory sentencing Guidelines. The district court sentenced Fluker to 340 months' imprisonment on Counts 1 and 3, to run concurrently, and to a mandatory sixty months' imprisonment on Count 2, to run consecutively, yielding a total sentence of 400 months.

2

Five years later, the district court modified Fluker's sentence under 18 U.S.C. § 3582(c)(2) and resentenced him to 327 months' imprisonment on Counts 1 and 3, to run concurrently. The consecutive 60-month sentence on Count 2 remained unchanged, so Fluker's total sentence became 387 months.

The Supreme Court of the United States held in 2015 that the residual clause of the ACCA was unconstitutionally vague, *Johnson v. United States*, 135 S. Ct. 2551 (2015), and, in 2016, that this decision was retroactively applicable on collateral review, *Welch v. United States*, 136 S. Ct. 1257 (2016). We granted Fluker's motion for permission to file a successive § 2255 motion raising a *Johnson* claim. *In re: Eddie Dean Fluker*, No. 16-414 (4th Cir. May 5, 2016).

The district court granted Fluker's § 2255 motion, concluding that—without the residual clause—Fluker's prior convictions no longer served as ACCA predicates. It vacated Fluker's sentence and directed a probation officer to prepare a revised pre-sentence report (PSR).

Although the revised PSR did not apply the ACCA to Fluker's advisory Guidelines calculation, it designated Fluker as a career offender under § 4B1.1 and § 4B1.2 based on two prior convictions for Georgia robbery. As a result of changes to the Guidelines Manual between Fluker's original sentencing and resentencing, applying the career-offender designation to Fluker's Guidelines calculation resulted in a higher Guidelines range than the one applied to Fluker in his original sentencing hearing. Under these circumstances, the Guidelines direct that the court should use the Manual in effect at the time of the original sentencing to calculate the Guidelines range so as to avoid

violating the Ex Post Facto Clause. U.S.S.G. § 1B1.11(b)(1); *see also Peugh v. United States*, 569 U.S. 530, 533 (2013) (holding that using a higher Guidelines range at sentencing than was authorized for the offense at the time of its commission violates the Ex Post Facto Clause). Under the 1991 Guidelines Manual, Fluker was also subject to the career-offender designation, and his Guidelines range was 210 to 262 months' imprisonment.

Fluker objected to the career-offender designation, arguing that Georgia robbery is not a "crime of violence" under the 2016 Guidelines Manual definition. And because Fluker's Guidelines range without application of the career-offender designation would be lower under the 2016 Guidelines Manual than under the 1991 Guidelines Manual, Fluker argued the Court did not need to change editions in order to avoid an Ex Post Facto Clause problem.

The district court overruled Fluker's objection and held that Georgia robbery was a crime of violence under the 2016 Guidelines Manual. It noted the absence of any published or unpublished Fourth Circuit opinions on point and relied on an unpublished Eleventh Circuit decision holding that Georgia robbery is a crime of violence. *See United States v. Cooper*, 689 F. App'x 901 (11th Cir. 2017). Given the Ex Post Facto concerns, the court used the 1991 Guidelines Manual to calculate Fluker's Guidelines range for resentencing, as required by *Peugh*, 569 U.S. at 533.

Before resentencing Fluker, the district court allowed the Government to call Officer Thomas Caldwell to testify as a victim-witness to Fluker's offense conduct. In so doing, it overruled Fluker's objection that Officer Caldwell could not testify during

4

resentencing because he had not testified during the original sentencing hearing. The district court explained that the Government could call Officer Caldwell given that the proceeding was a full resentencing.

On November 1, 2017, the district court sentenced Fluker to 240 months' imprisonment (the statutory maximum) on Count 1, a concurrent sentence of 248 months' imprisonment on Count 3, and the statutorily-mandated 60 months' imprisonment, to run consecutively, on Count 2. This sentence yielded a 308-month term of imprisonment, which essentially equaled Fluker's time served on the Virginia convictions.

Following the resentencing hearing, however, Fluker was not released from the custody of the Bureau of Prisons (BOP) because soon after he began serving his sentence for the Virginia convictions, he committed additional crimes while in custody. For those offenses, the U.S. District Court for the Northern District of Florida sentenced him to 120 months' imprisonment, to be served "consecutive to the term of imprisonment . . . from the Western District of Virginia" ("Florida sentence"). Supp. J.A. 33. After Fluker was resentenced for his Virginia convictions, the BOP recalculated his custody computation, including administrative Good Conduct Time, and determined that on January 6, 2015, Fluker finished serving his Virginia sentence and began serving his Florida sentence. The BOP currently projects that Fluker will be released in September 2023.

Fluker noted a timely appeal, and this Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

5

II.

On appeal, Fluker argues the district court committed two errors during resentencing. First, he contends that it procedurally erred in calculating his Guidelines range. In particular, he posits that he is not a career offender under the 2016 Guidelines Manual because his Georgia robbery convictions do not constitute "crimes of violence." He maintains that this initial error resulted in several additional errors related to his Guidelines range, including using the incorrect (1991) edition of the Guidelines Manual. Second, he challenges the district court's decision to allow Officer Caldwell to testify during the resentencing hearing.

The Government acknowledges that two decisions from this Court issued since the resentencing hearing support Fluker's contention that he was improperly designated as a career offender. And it concedes that if the career-offender designation was improper, then the district court should have used the 2016 Guidelines Manual to calculate Fluker's Guidelines range. Notwithstanding these concessions, the Government contends that the Court should not vacate Fluker's sentence because Fluker's appeal is moot because he is no longer in BOP custody as a result of his Virginia sentence. It further asserts the district court did not abuse its discretion in allowing Officer Caldwell to testify.

A.

1.

We review Fluker's sentence "under a deferential abuse-of-discretion standard," looking first to whether the district court committed a "significant procedural error" such as improperly calculating the Guidelines range. *United States v. Evans*, 526 F.3d 155, 161

(4th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 41, 51 (2007)). "In assessing whether a district court properly calculated the Guidelines range, including its application of any sentencing enhancements, [we] review[ ] the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v. Horton*, 693 F.3d 463, 474 (4th Cir. 2012) (internal quotation marks and alteration omitted).

Here, the district court properly began by considering the 2016 Guidelines Manual because, in the usual case, courts sentence a defendant using the Guidelines Manual that is "in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(4)(A)(ii). Under this edition of the Guidelines, Fluker would be a career offender if, among other things, his two Georgia robbery convictions were for a crime of violence. U.S.S.G. § 4B1.1(a). In relevant part, a "crime of violence" is an offense "punishable by imprisonment for a term exceeding one year, that . . . is . . . robbery" (the enumerated offense clause). U.S.S.G. § 4B1.2(a)(2).[1]

The Court uses a two-step approach to determine whether Georgia robbery aligns with the enumerated offense of robbery. *See United States v. Peterson*, 629 F.3d 432, 436 (4th Cir. 2011). First, the Court identifies the "generic" definition of robbery. *Id.* Second, the Court determines whether Georgia robbery categorically matches generic robbery,

---

[1] Section 4B1.2(a) also defines a "crime of violence" as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). The district court held that Georgia robbery did not qualify as a crime of violence under this clause, and the Government did not appeal that determination. As such, the only question before us is whether Georgia robbery aligns with the enumerated offense of "robbery."

7

meaning that an individual convicted of the state offense necessarily was convicted of the generic offense. *Id.*

When Fluker was resentenced, this Court had no case law addressing either of these inquiries. In the intervening months, that's changed. For purposes of the first step, we have now defined "generic robbery" as "the misappropriation of property under circumstances involving immediate danger to the person," in which "the immediate danger element . . . is categorically satisfied by the taking of property from a person or a person's presence by means of force or putting in fear." *United States v. Gattis*, 877 F.3d 150, 156–57 (4th Cir. 2017) (internal quotation marks and alteration omitted). We are bound to use that definition of generic robbery. Relevant to the second step, we have now held that Georgia robbery does not align with generic robbery because Georgia robbery can be committed "[b]y sudden snatching," and case law has construed that term more broadly than generic robbery. *See United States v. Jackson*, 713 F. App'x 172 (4th Cir. 2017). But *Jackson* was unpublished and used a different definition of generic robbery than we eventually adopted in *Gattis*, which was decided after *Jackson*.[2] *See id.* at 177.

---

[2] *Jackson* used the Model Penal Code (MPC) definition of robbery, which provides that a robbery occurs when a person, in the course of committing a theft:

> (a) inflicts serious bodily injury upon another; (b) threatens another with or purposely puts him in fear of immediate serious bodily injury; or (c) commits or threatens immediately to commit any felony of the first or second degree.

713 F. App'x at 177 (quoting Model Penal Code § 222.1 Robbery (Am. Law. Inst. 2016)). *Gattis* rejected that definition in favor of the definition in LaFave's *Substantive Criminal Law* treatise after concluding that the MPC's requirement of "serious bodily injury" "has *not* been widely adopted," and that LaFave's definition—which requires less force to commit the crime—was better in line with the definition the majority of jurisdictions have adopted. 877 F.3d at 156; *see* 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3, at 173 (2d ed. 2003).

So, while these cases inform our analysis, they do not necessarily compel a particular result here.

With the *Gattis* definition of robbery in hand, though, we can turn immediately to the second step of the analysis and determine whether Georgia robbery aligns with that definition. In so doing, we approach the Georgia offense "categorically, looking only to the fact of conviction and the statutory definition of the prior offense." *United States v. Cabrera-Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013) (internal quotation marks omitted). Under this approach, we are concerned with the elements of the offense of conviction, not Fluker's specific conduct. *Id.*[3] To determine whether a prior conviction qualifies as a

---

[3] This "categorical approach" is modified "for 'divisible' statutes," those being "statutes that list elements in the alternative[ ] and thereby define multiple crimes." *See United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017) (alteration in original) (internal quotation marks omitted). The Government does not contend the modified categorical approach should apply here, nor could it.

The Supreme Court has explained that "elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (internal quotation marks omitted). In Georgia, robbery can occur "by" any of the following: (1) using force; (2) intimidating, or using threats or coercion, or placing a person in fear of immediate serious bodily injury to himself or another; or (3) suddenly snatching. Ga. Code § 16-8-40(a). The use of the disjunctive does not resolve the question of whether these alternative paths to a conviction are elements or means. *See Omargharib v. Holder*, 775 F.3d 192, 194 (4th Cir. 2014) ("[M]ere use of the disjunctive 'or' in the definition of a crime does not automatically render it divisible.").

Georgia case law and its pattern jury instructions demonstrate that a jury need not agree unanimously about which of these methods a defendant used to commit the charged robbery. *See Mathis*, 136 S. Ct. at 2256 (observing that courts must consult "authoritative sources of state law" to resolve this question). Instead, they are all means of satisfying a single element of the offense of robbery. For example, in *Hogan v. State*, the Court of Appeals of Georgia noted that "*the* crime of robbery" requires that the individual satisfy the other elements of the offense "by employment of one of the various alternative means" and is a crime that "may be accomplished in alternative ways." 343 S.E.2d 770, 771–72 (Ga. Ct. App. 1986); *see also Kilpatrick v. State*, 618 S.E.2d 719, 720 (Ga. Ct. App. 2005); Georgia Pattern Jury Instructions—Criminal, Vol. II, 2.60.10 (4th ed. 2017) (listing three elements of Georgia robbery, one of which lists all the delineated means of accomplishing it). As we recognized in *Jackson*, "[u]nder this instruction, a (Continued)

9

Guideline predicate offense, the Court compares the defendant's offense to the generic offense to determine "whether a defendant convicted of the state offense necessarily satisfied the elements of the generic offense." *United States v. Mack*, 855 F.3d 581, 585–86 (4th Cir. 2017).

> Georgia robbery occurs when,
>
> with intent to commit theft, [an individual] takes property of another from the person or the immediate presence of another:
>   (1) By use of force;
>   (2) By intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another; or
>   (3) By sudden snatching.

Ga. Code § 16-8-40(a) (1991).

Because the Georgia robbery statute is broader than the generic definition of robbery we adopted in *Gattis*, the offenses do not align categorically. In Georgia, robbery "by sudden snatching" only requires the force "necessary for the robber to transfer the property taken from the owner to his possession." *Kendrick v. State*, 630 S.E.2d 863, 865 (Ga. Ct. App. 2006) (internal quotation marks omitted); *see also Brown v. State*, 710 S.E.2d 674, 678–79 (Ga. Ct. App. 2011) (describing "immediate presence" as "stretch[ing] fairly far" and noting "robbery convictions are usually upheld even out of the physical presence of the victim if what was taken was under his control or his responsibility and if he was not too far distant" (internal quotation marks omitted)). This

---

jury need not agree unanimously that the felonious taking was committed by the use of force, by intimidation, or by sudden snatching, but only that one of those means was employed." 713 F. App'x at 176. The categorical approach thus applies.

10

level of force does not satisfy generic robbery's requirement that property must be taken "under circumstances involving immediate danger to the person," such as "taking of property from a person or a person's presence *by means of force or putting in fear*." *Gattis*, 877 F.3d at 156–57 (alteration omitted) (emphasis added).

Indeed, *Gattis* specifically noted that robbery by snatching would constitute generic robbery only "if the defendant uses force to overcome the victim's resistance or force *more than necessary* to simply remove an item from the victim's grasp." *Id.* at 157 (emphasis added). Because Georgia robbery does not always require this amount of force, it is broader than generic robbery, and therefore is not a crime of violence. The Government acknowledges as much, noting that "*Gattis* makes clear that under its definition of generic robbery, some sudden snatching offenses can constitute generic robbery, but some will not." Response Br. 40. Georgia robbery is thus broader than generic robbery, and a conviction for Georgia robbery is not "robbery" under the enumerated offense provision of U.S.S.G. § 4B1.2(a).

Although the current controlling case law was not available to the district court at the time of sentencing, Fluker's Georgia robbery convictions are not predicates for the career-offender designation under current Fourth Circuit law. And because Fluker's Guidelines range should have been calculated without the career-offender designation, there was no basis for turning to the 1991 Guidelines Manual in order to avoid a non-existent Ex Post Facto Clause problem. The court should have used the 2016 Guidelines Manual to calculate Fluker's Guidelines range. Therefore, Fluker's resulting sentence was the product of cognizable procedural error.

11

2.

The Government does not dispute the above analysis or the conclusion that the district court erred, but it contends that Fluker's claim is moot. As support, the Government points to the BOP's determination that Fluker stopped serving his Virginia sentence in January 2015 and is currently serving only his Florida sentence. In the Government's view, Fluker has been released from custody for his Virginia sentence, which renders moot his challenge to the length of that sentence. Further, the Government asserts that Fluker's continued custody on the Florida sentence is entirely unrelated to the length of his Virginia sentence and thus is not a collateral consequence that would allow the Court to exercise jurisdiction. Finally, it contends that the district court's error makes Fluker only *eligible* for a lower sentence and whether Fluker would actually receive a lower sentence that might affect his ultimate release date is pure speculation. We disagree with the Government.

The doctrine of mootness "derives from the requirement of [Article] III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (internal quotation mark omitted). "In general a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (internal quotation marks omitted). Usually, when a defendant's sentence expires during legal proceedings that challenge the length of the term of imprisonment, the case becomes moot unless a cognizable collateral consequence remains. *See, e.g.*, *Lane v. Williams*, 455 U.S. 624, 630–32 (1982). As the Supreme Court

has explained, this is so because defendants "are no longer subject to any direct restraint as a result" of the challenged sentence after their release from imprisonment, and "[t]heir liberty or freedom of movement is not in any way curtailed by a [sentencing] term that has expired." *Id.* at 631. Examples of cognizable collateral consequences to a conviction include "being unable to engage in certain businesses, serve as an official of a labor union, vote in any . . . election[,] or serve as a juror." *Nakell v. Att'y Gen. of N.C.*, 15 F.3d 319, 322 (4th Cir. 1994).

Fluker's case presents the unusual scenario where his appealed sentence (the Virginia sentence) has ended, but he remains lawfully in BOP custody serving a sentence (the Florida sentence) to be served consecutive to the one he is challenging in this appeal.[4] While Fluker's Florida sentence arose from different offenses and was imposed at a different time, the Florida sentencing court specifically tied the running of that sentence to the amount of time Fluker served as a result of his Virginia convictions. The Florida court's instruction could not be plainer: "this term shall be consecutive to the term of imprisonment in Dkt. #92-00031-001 from the Western District of Virginia." Supp. J.A. 33. The start date for Fluker's Florida sentence was always and remains contingent on when he finishes serving the Virginia sentence. The BOP's adjustment to Fluker's administrative records following the prior resentencing reinforces the direct

---

[4] Fluker's circumstance does not fit neatly into our past cases acknowledging a case is not moot when the prisoner is still in BOP custody. Those cases deal with serving only the sentence then being challenged on appeal. Nor does this case fit neatly into the "collateral consequences" analysis because those cases presuppose a petitioner's actual release from incarceration and look to other circumstances that might render the case not moot.

13

nexus between the two sentences. In consequence, Fluker continues to have a legally cognizable interest in the outcome of this appeal. If he prevails, his ultimate release date may once again shift to an earlier date.[5]

Fluker's interest is not speculative. Certainly, as the Government observes, Fluker has to prevail on appeal, and then persuade the district court to resentence him to a lower term of imprisonment before his ultimate release date is moved forward. But these hurdles do not make his claim moot. They are common to nearly all defendants whose sentences are appealed and then vacated and remanded for resentencing.

The cases the Government relies on to suggest otherwise are inapposite because they concerned speculative collateral consequences in *other* proceedings as opposed to the normal course of appeal and remand in the case pending then before the court. *E.g.*, *Spencer v. Kemna*, 523 U.S. 1, 14 (1998) (rejecting as speculative petitioner's argument that his appeal was not moot following his release from imprisonment because the

---

[5] Fluker points out that he may be eligible for immediate release from BOP custody after resentencing. The Government accurately counters that this may not be true because the district court could impose the same sentence by varying or departing upward. It is for the district court to select an appropriate sentence, but it can do so only after properly calculating Fluker's Guidelines range.

To show that this case is not moot, it is sufficient to rely on the conclusion set out above: the length of the Virginia sentence—whatever it is—affects the Florida sentence's start date and thus the date on which Fluker will ultimately be released from custody. Indeed, as Fluker notes, it is possible he may be immediately released from custody. As noted, his sentence for Count 2 is a statutorily-mandated 60-month term of imprisonment to be served consecutive to any other sentence. As the Government observes in its Response Brief, Fluker's Guidelines range for Counts 1 and 3 could drop to 51 to 63 months as a result of using the 2016 Guidelines Manual non-career-offender provisions. If Fluker were sentenced to a within-Guidelines sentence of 63 months' imprisonment for those counts, his Virginia sentence would be 123 months. Hence, Fluker's total federal sentence (Virginia plus Florida sentences) would be 243 months. But he has already served more than 300 months in BOP custody. This possibility further demonstrates the real and concrete consequences of the Virginia sentence's length on his eventual release date.

challenged parole revocation "could be used to his detriment in a future parole proceeding"); *United States v. Eligwe*, 627 F. App'x 263, 264 (4th Cir. 2016) (rejecting as speculative Eligwe's argument that his appeal was not moot as a result of his release from imprisonment because the challenged supervised release revocation was not likely to impact his then-pending immigration proceedings given his underlying convictions). That concept has no application here, where a prisoner is alleging a concrete and already-identifiable effect of a sentencing error that could be rectified by prevailing on appeal and receiving a different sentence on remand. To hold otherwise would moot most sentencing appeals given that a defendant must persuade both the appellate court of an error and then persuade the district court to exercise its discretion to impose a different sentence. But those hurdles are not the sort of speculative impact identified in our case law that would affect the mootness inquiry. For these reasons, Fluker's claim is not moot.

\* \* \*

In conclusion, Fluker's claim is justiciable. The district court committed procedural error during sentencing by finding that Fluker's Georgia robbery convictions qualified him for the career-offender designation. As a result, the district court also erred in using the 1991 Guidelines Manual to determine Fluker's Guidelines range. Consequently, we vacate the sentence and remand for resentencing consistent with this opinion.[6]

_____

[6] Fluker challenges a separate aspect of his Guidelines range as well, asserting that the PSR incorrectly contained two criminal history points for having committed his offense while on parole. He did not challenge this issue before the district court, and the two points did not matter
(Continued)

B.

Fluker raises an additional challenge to the district court's evidentiary decision at resentencing. As that issue is likely to recur on resentencing, we will address it now. *See U.S. ex rel. Drakeford v. Tuomey Healthcare Sys., Inc.*, 675 F.3d 394, 405–06 (4th Cir. 2012).

Fluker argues the district court abused its discretion by allowing Officer Caldwell to testify at the resentencing hearing. Noting that Caldwell did not testify at the original sentencing hearing, Fluker maintains that the district court improperly allowed the Government to introduce new evidence through Caldwell during resentencing.

The district court did not abuse its discretion in allowing Officer Caldwell to testify. *See United States v. Seay*, 553 F.3d 732, 741–42 (4th Cir. 2009) (articulating the standard for reviewing the court's evidentiary decisions during a sentencing hearing). Notably, this was not a limited resentencing hearing following an appeal, but rather the grant of a new sentencing hearing following the grant of a § 2255 motion. During resentencing, absent some other limiting principle, "the district court may entertain new arguments as necessary to effectuate its sentencing intent," and it can—but is not

---

in setting Fluker's criminal history category below because the improper career-offender designation automatically set Fluker's criminal history category at VI regardless of any other factors. But whether those points are proper will matter at resentencing. Moreover, the Government concedes that these criminal history points are not supported by the record.

Based on the record before us and the Government's concession, it was plainly erroneous to include these criminal history points in Fluker's criminal history computation. *See United States v. McLaurin*, 764 F.3d 372, 387–88 (4th Cir. 2014) (stating the Court reviews for plain error a district court's criminal history computations that were not objected to at the time and setting out the standard for plain error).

obligated to—"consider any new evidence or arguments." *United States v. Susi*, 674 F.3d 278, 285 (4th Cir. 2012) (internal quotation marks omitted). In short, this was not a situation where allowing the Government to introduce new evidence would result in the Government getting a second bite at the apple to produce sufficient evidence to support a particular sentencing decision. *See United States v. Parker*, 30 F.3d 542, 553–54 (4th Cir. 1994) (holding the Government could not have a second opportunity to produce evidence that it had failed to present in support of a Guidelines enhancement following a defendant's successful appeal that a preponderance of the evidence did not support the enhancement). As such, Fluker's case support is inapposite. *See United States v. Canty*, 570 F.3d 1251, 1256–57 (11th Cir. 2009) (rejecting the Government's argument that it should be allowed a second opportunity to present evidence supporting a Guidelines enhancement that the appellate court concluded was not supported by a preponderance of the evidence submitted in the original sentencing hearing). The district court appropriately exercised its discretion in allowing Officer Caldwell to testify.

## III.

For the reasons set out above, we vacate Fluker's sentence and remand for further proceedings consistent with this opinion. Having decided the merits following oral

argument, we deny as moot Fluker's motion to vacate and remand and motion to expedite.[7]

*VACATED AND REMANDED*

---

[7] In view of the potential attendant consequences, we encourage the district court upon remand to expedite the resentencing hearing and entry of the new sentencing order.