# United States Court of Appeals
# For the First Circuit

No. 18-1678

UNITED STATES OF AMERICA,

Appellee,

v.

DEJUAN RABB, a/k/a SLIM,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Barron, Selya, and Boudin,
Circuit Judges.

Syrie Davis Fried, with whom Good Schneider Cormier & Fried was on brief, for appellant.
Julia M. Lipez, Assistant United States Attorney, with whom Halsey B. Frank, United States Attorney, was on brief, for appellee.

October 30, 2019

**BARRON**, **Circuit Judge**. DeJuan Rabb brings this appeal to challenge the 2018 sentence that he received after pleading guilty in the United States District Court for the District of Maine to possession with intent to distribute furanyl fentanyl and cocaine base in violation of 21 U.S.C. § 841(a)(1) and for the distribution of furanyl fentanyl, also in violation of 21 U.S.C. § 841(a)(1). Rabb contends that the District Court erred in concluding that he was a "career offender" under the 2016 version of the United States Sentencing Guidelines Manual ("Guidelines"), see U.S.S.G. §§ 4B1.1, 4B1.2(a)(2), based on his 2000 New York state law robbery conviction. We agree with Rabb and thus vacate and remand for resentencing.

## I.

The Guidelines define a "career offender" to be an individual over eighteen years of age at the time of the offense of conviction whose offense of conviction is at least their third felony conviction -- whether state or federal -- for either a "crime of violence" or a "controlled substance offense" or a combination thereof. U.S.S.G. § 4B1.1(a) (U.S. Sentencing Comm'n 2016). The Guidelines define a "crime of violence," in turn, as a felony that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery,

arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G § 4B1.2(a) (emphasis added).

The first clause in the "crime of violence" definition is known as the "elements clause," or the "force clause." The second clause is commonly referred to as the "enumerated offenses clause," as it lists a series of crimes, "robbery" among them. U.S.S.G §§ 4B1.2, 4B1.1(a) (2016).

The United States Probation Office's Second Revised Presentence Investigation Report ("PSR") in Rabb's case found that he had the requisite number of prior felony convictions to be a "career offender" under the Guidelines. The PSR found that he had committed a "controlled substance offense" based on his 2014 conviction under New York state law for criminal possession of a controlled substance in the third degree. The PSR also found that he had committed a "crime of violence" based on his 2000 conviction for second-degree robbery in violation of New York Penal Law §160.10(1).[1]

The PSR specifically determined that his 2000 New York state law robbery conviction was for a "crime of violence" because the enumerated offenses clause of the "crime of violence" definition in the Guidelines included "robbery." The PSR relied

---

[1] Rabb was arrested in 1999 and convicted in 2000 for second-degree New York robbery.

- 3 -

on that clause after concluding that the force clause did not apply in light of our ruling in United States v. Steed, 879 F.3d 440 (1st Cir. 2018). There, we held that it was reasonably probable that, as of 2000, a robbery of the type for which Rabb was convicted encompassed even a purse snatching committed by means so sudden that the victim was merely made aware of the perpetrator's presence. We further held that such means did not amount to a use of force or threatened force within the meaning of the force clause. See Steed, 879 F.3d at 451.

The PSR followed the Guidelines' instruction to group related counts of conviction -- which Rabb's two counts are -- pursuant to U.S.S.G. § 3D1.2, and then determine a combined offense level for the group, id. § 3D1.3. Based on the application of the "career offender" sentencing enhancement and other calculations not at issue here, the PSR determined that Rabb's total offense level under the Guidelines for his grouped 2018 convictions was 31. The PSR further noted that, given the "career offender" determination, Rabb was subject to U.S.S.G. § 4B1.1(b), which increases the criminal history category for all career offenders to VI. The PSR thus found that Rabb's sentencing range for the grouped convictions under the Guidelines was for a prison sentence of 188 to 235 months.

At his sentencing hearing, Rabb argued that his 2000 New York state law robbery conviction did not qualify as a "crime of

violence" even under the enumerated offenses clause of the "crime of violence" definition in the Guidelines. He relied for that argument, in substantial part, on our reasoning in Steed. But, the District Court concluded that Steed "at most forecloses a finding that a New York second degree robbery conviction falls under the force clause." The District Court ruled, however, that Rabb's 2000 conviction was for a variant of robbery in New York that "substantially corresponds to generic robbery" and thus that is encompassed by the enumerated offenses clause of the Guidelines' "crime of violence" definition.

Having made that determination, the District Court adopted the PSR's determination that Rabb's offense level for the group of convictions was 31 and thus that his sentencing range under the Guidelines was for a prison sentence of 188 to 235 months. The District Court varied downwards, however, and imposed a 140-month prison sentence for each conviction to be served concurrently, to be followed by six years of supervised release. Rabb now appeals.

## II.

The only issue that we must resolve on appeal is whether "robbery" in the enumerated offenses clause of the "crime of violence" definition in the Guidelines encompasses the variant of robbery under New York law that Rabb was convicted of in 2000.

That issue is one of law, and so our review is de novo. United States v. Almenas, 553 F.3d 27, 31 (1st Cir. 2009).

The parties agree that we must apply what is known as the "categorical approach" to resolve this issue. Taylor v. United States, 495 U.S. 575, 600-02 (1990). Under that approach, we focus on the least of the conduct encompassed by the assertedly qualifying offense for which Rabb was convicted and not on the "particular facts underlying the conviction." United States v. Dávila-Félix, 667 F.3d 47, 56 (1st Cir. 2011) (quoting United States v. Piper, 35 F.3d 611, 619 (1st Cir. 1994)). In doing so, however, we must focus on whether there is "a realistic probability, not a theoretical possibility," that the least of the conduct that offense criminalizes is greater than the conduct encompassed by "robbery" as it is used in the enumerated offenses clause of the Guidelines' definition of a "crime of violence." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007).

In undertaking this categorical inquiry, "we apply an historical approach." Steed, 879 F.3d at 447. Thus, we look to "the state of New York law as it stood at the time that [Rabb] was convicted of attempting to commit that crime." Id.; see also United States v. Faust, 853 F.3d 39, 57 (1st Cir. 2017), reh'g denied, 869 F.3d 11 (1st Cir. 2017). Moreover, we must determine whether the underlying criminal offense is "divisible," in the sense that the statute defining the offense "sets out one or more

- 6 -

elements of the offense in the alternative." Descamps v. United States, 570 U.S. 254, 257 (2013); see also United States v. Tavares, 843 F.3d 1, 10 (1st Cir. 2016). For, if the statute defining the offense does so, then we must apply what is known as the modified categorical approach, which requires that we focus this categorical inquiry on the specific variant of the divisible offense for which the defendant was convicted. See Descamps, 570 U.S. at 257.

The parties agree that New York law, as of the time of Rabb's conviction, defined a number of distinct variants of the offense of robbery. The parties further agree that Rabb was convicted of a specific, divisible variant of second-degree robbery under New York law, namely, the variant that is set forth in New York Penal Law § 160.10(1). That variant requires the government to prove that the defendant, in committing "robbery," as defined in New York Penal Law § 160.00, was "aided by another person actually present." N.Y. Penal Law § 160.10(1).

Neither party contends, however, that the additional element set forth in § 160.10(1) is relevant to the categorical inquiry that we must undertake. Rather, they agree that inquiry turns solely on the scope of § 160.00 itself.[2] We thus follow the

_____

[2] Steed was convicted under a different statutory section of second-degree New York robbery, N.Y. Penal Law § 160.10(2)(a), which, unlike the section Rabb was convicted under, does include

- 7 -

parties in training our focus on the scope of § 160.00 as it was

defined at the time of Rabb's conviction in 2000.

As of that time, just as now, § 160.00 stated:

> A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:

> 1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

> 2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

N.Y. Penal Law § 160.00.  The record does not specify the prong

of New York Penal Law § 160.00 that defines the offense for which

Rabb was convicted.  For that reason, we look to the least of the

conduct that § 160.00 encompassed.  See Duenas-Alvarez, 549 U.S.

at 193.

---

additional language related to the amount of force required. Steed, 879 F.3d at 445-46.  New York Penal Law § 160.10(2)(a) adds an additional requirement that the robbery defendant or their accomplice "[c]auses physical injury to any person who is not a participant in the crime."  The Steed court found that "this injury requirement would not in and of itself have ruled out" a crime of larceny involving the use of de minimis force from "qualifying as a robbery."  879 F.3d at 450.  Nevertheless, the fact that Rabb and Steed were convicted under different subsections of second-degree robbery does not affect the application of Steed's holding to this case.  If anything, it only means that the subsection that Rabb was convicted under requires even less force than Steed's because Rabb's conviction did not include the requirement of "[c]aus[ing] physical injury."

That determination is easily made here.  Steed held that "there is a realistic probability that . . . the least of the acts" that this provision encompassed as of 2000 -- and thus as of the time of Rabb's conviction -- "included 'purse snatching, per se.'" 879 F.3d at 450 (quoting People v. Santiago, 405 N.Y.S.2d 752, 757 (N.Y. App. Div. 1978), aff'd, 402 N.E.2d 121 (N.Y. 1980)) (discussing People v. Lawrence, 617 N.Y.S.2d 769 (N.Y. App. Div. 1994)).  Steed further explained that there was a realistic probability, as of that time, that a perpetrator needed to use only enough force in committing such a snatching to "produce awareness, although the action may be so swift as to leave the victim momentarily in a dazed condition." Id. at 449 (quoting United States v. Mulkern, 854 F.3d 87, 92-93 (1st Cir. 2017)).

The critical question, then, is whether "robbery" as listed in the enumerated offenses clause of the Guidelines' definition of "crime of violence" encompasses even the kind of purse snatching per se that Steed held that § 160.00 encompassed in 2000, when Rabb was convicted of his New York state law robbery offense.[3]  The answer to that question depends on whether the least

_____

[3] Rabb argues that there are three elements that "robbery," as defined in the enumerated offenses clause, requires but that a 2000 New York robbery conviction did not.  Rabb's argument about the first of these three elements -- the use of force greater than de minimis force -- is based on our holding in Steed. But, because we agree with him that his robbery conviction does not qualify as a crime of violence under the enumerated offenses clause based on

- 9 -

of the conduct encompassed by "generic robbery" in 2016, which is when the Guidelines that Rabb was sentenced under in 2018 went into effect, see Taylor, 495 U.S. at 593-94 (determining the generic elements of burglary under the Armed Career Criminal Act (ACCA), which was enacted in 1984, by looking to the "generic 1984 definition of burglary"),[4] encompasses even such a sudden purse snatching.

"The Government bears the burden of establishing that a prior conviction qualifies as a predicate offense for sentencing enhancement purposes." Dávila-Félix, 667 F.3d at 55; see also United States v. Bryant, 571 F.3d 147, 157-58 (1st Cir. 2009). The government identifies no authority, however, that indicates that generic robbery, as of 2016, encompassed such snatchings.

In fact, the government has set forth substantial authority to indicate that generic robbery requires a type of force

---

the first element, we need not address the other two elements that he discusses.

[4] Although the enumerated offense of robbery was moved into the main text of § 4B1.2(a)(2) of the Guidelines in 2016, "robbery" was previously enumerated in the Application Note. See, e.g., U.S.S.G. § 4B1.2 cmt. n.1 (U.S. Sentencing Comm'n 2015). Nevertheless, as the government has not suggested any reason -- nor do we see any -- for why the generic definition of robbery would be any less likely to require more than de minimis force at the time of prior iterations of the guidelines, we look to the "contemporary" meaning of robbery as of 2016.

that creates "an immediate danger to the person."[5]  See, e.g., United States v. Santiesteban-Hernandez, 469 F.3d 376, 380-81 (5th Cir. 2006) ("[T]he majority of states focus on an act of force in articulating the requisite level of immediate danger."), abrogated on other grounds by United States v. Rodriguez, 711 F.3d 541 (5th Cir. 2013).[6]  This understanding of robbery accords, moreover, with the Model Penal Code.  See Model Penal Code § 222.1 cmt. 3 at 108 (1980) ("[I]t is force or threat of force directed at placing the victim in serious fear for his safety that justifies the escalated

_____

[5] The government cited a number of other decisions to support this point.  The government quoted United States v. Lockley, 632 F.3d 1238, 1244 (11th Cir. 2011), United States v. Walker, 595 F.3d 441, 446 (2d Cir. 2010), and United States v. Ball, 870 F.3d 1, 6 (1st Cir. 2017), which defines generic robbery as larceny by force or intimidation.  The government also quoted another definition of generic robbery -- the "misappropriation of property under circumstances involving [immediate] danger to the person." United States v. Santiesteban-Hernandez, 469 F.3d 376, 380 (5th Cir. 2006) (alteration in original) (quoting 2 Wayne R. LaFave, Substantive Criminal Law § 20.3 intro., (d)(2) (2d ed. 2003)), abrogated on other grounds by United States v. Rodriguez, 711 F.3d 541 (5th Cir. 2013).

[6] Rabb cites precedent to the same effect.  See, e.g., United States v. Becerril-Lopez, 541 F.3d 881, 891 (9th Cir. 2008) (defining generic robbery as "aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving immediate danger to the person" (quoting Santiesteban-Hernandez, 469 F.3d at 380)); United States v. Mulkern, No. 1:15-cr-00054-JAW, 2017 U.S. Dist. LEXIS 191486, at *13 (D. Me. Nov. 20, 2017) (defining generic robbery as a taking "by violence, intimidation, or by threatening the imminent use of force").

penalties of the robbery offense."). The government does not explain how a snatching that occurs in such a sudden manner as to merely make the victim "aware" of the perpetrator's presence constitutes the type of conduct that suffices to engender serious fear for safety in the victim or to place the victim in immediate danger. Indeed, substantial authority indicates that generic robbery does not encompass conduct of that kind. See, e.g., 3 Wayne R. LaFave, Substantive Criminal Law § 20.3(d)(1) (3d ed.) ("The great weight of authority, however, supports the view that there is not sufficient force to constitute robbery when the thief snatches property from the owner's grasp so suddenly that the owner cannot offer any resistance to the taking.").

Moreover, the government appears to have accepted as much in the course of responding to Rabb's invocation at sentencing of United States v. Fluker, 891 F.3d 541 (4th Cir. 2018), in which the Fourth Circuit held that Georgia robbery was construed "more broadly than generic robbery" because it included "sudden snatching[s]," which only require the force "necessary for the robber to transfer the property taken from the owner to his possession." Id. at 547-49. The government contended in response that Fluker was distinguishable from Rabb's case precisely because the offense of conviction under the Georgia robbery statute at issue in Fluker could be committed "by sudden snatching, so there wasn't any force involved in their statute by definition," thereby

- 12 -

rendering the Georgia robbery statute "broader than generic robbery."[7]

The Supreme Court's recent decision in <u>Stokeling</u> v. <u>United States</u>, 139 S. Ct. 544 (2019), also points against the government's position. There, in the course of holding that a state robbery offense that requires the defendant to overcome the victim's resistance qualifies as a predicate violent felony under the ACCA's elements clause, the Court explained that "Congress . . . defined robbery as requiring the use of 'force or violence' -- a clear reference to the common law of robbery. And the level of 'force' or 'violence' needed at common law was by this time well established: 'Sufficient force must be used to overcome resistance.'" <u>Id.</u> at 551 (internal citations omitted). The <u>Stokeling</u> Court then looked to the states' definitions of robbery and found that "[i]n 1986, a significant majority of the States defined nonaggravated robbery as requiring force that overcomes a victim's resistance." <u>Id.</u> at 552. There is no indication that a robbery of that kind includes one committed in

---

[7] Even New York, as of 2015, appears to require more force for a robbery conviction than the de minimis amount needed to effectuate a purse snatching. <u>See</u> <u>People</u> v. <u>Jurgins</u>, 46 N.E.3d 1048, 1053 (N.Y. 2015) (noting that "the parties agree that a taking 'by sudden or stealthy seizure or snatching' would not be considered a robbery or other felony in New York").

a way that need merely make the victim aware of the perpetrator's presence.

The government at oral argument contended for the first time that "robbery" in the enumerated offenses clause must be construed to encompass even the kind of sudden purse snatchings described in Steed for a different reason. The government contended that "robbery" must be construed that way because, if the level of force required by "robbery" under the enumerated offenses clause is the same as that required by the force clause, then the listing of the enumerated offense of "robbery" would not be adding any additional type of crime to the definition of a "crime of violence" in the Guidelines and so would be superfluous.

The government identifies no authority, however, that indicates that an offense that a state labels "robbery" qualifies as a "robbery" under the enumerated offenses clause without regard to how much of an outlier such an expansive definition of "robbery" turns out to be. Yet, the logic of this late-breaking argument by the government would appear to require that even such an outlier definition of "robbery" would qualify. In any event, the government has waived this argument both by raising it only at this late juncture, see United States v. DeMasi, 40 F.3d 1306, 1320 n.14 (1st Cir. 1994), and by failing adequately to develop it, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 14 -

## III.

Accordingly, we **vacate** the sentence and **remand** for resentencing consistent with this opinion.