# United States Court of Appeals
## For the First Circuit

No. 20-1146

UNITED STATES OF AMERICA,

Appellee,

v.

DEJUAN RABB, a/k/a SLIM,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Thompson, Selya, and Barron,
Circuit Judges.

John M. Thompson and Thompson & Thompson, P.C. on brief for
appellant.
Halsey B. Frank, United States Attorney, and Noah Falk,
Assistant United States Attorney, on brief for appellee.

July 16, 2021

**SELYA**, **Circuit Judge**.  In an earlier appeal, we vacated a sentence imposed on defendant-appellant Dejuan Rabb and remanded for resentencing.  See United States v. Rabb (Rabb I), 942 F.3d 1, 7 (1st Cir. 2019).  On remand, the district court sentenced the defendant to serve, inter alia, a mandatory minimum six-year term of supervised release.  See 21 U.S.C. § 841(b)(1)(C).  The defendant appeals, asserting that the district court both failed to make a necessary finding and found facts that should have been reserved for a jury.  Assessing his claims under plain error review, we readily reject them.

## I. BACKGROUND

We briefly rehearse the relevant facts and travel of the case.  When — as in this case — the defendant appeals a sentence imposed following a guilty plea, we draw the facts from the plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the sentencing transcripts.  See United States v. Santa-Soler, 985 F.3d 93, 95 (1st Cir. 2021).

The defendant was arrested on August 31, 2017, after selling furanyl fentanyl to a confidential informant working with the Maine Drug Enforcement Agency.  A federal grand jury sitting in the District of Maine subsequently indicted him on sundry drug-related charges and — after some preliminary proceedings — he entered guilty pleas to two of the charges.  One count embodied a charge of possession with intent to distribute furanyl fentanyl

- 2 -

and the other embodied a charge of distribution of furanyl fentanyl. See 21 U.S.C. § 841(a).

Prior to the change-of-plea hearing, the government filed an information pursuant to 21 U.S.C. § 851(a)(1) (the Information). The Information memorialized the defendant's prior New York conviction for possession of a controlled substance (the 2015 conviction) and noted that judgment on that charge had been entered against the defendant on or about January 14, 2015. Pertinently, the Information notified the defendant that the government intended to rely upon the 2015 conviction in seeking enhanced penalties. See id. § 841(b)(1)(C).

Following the change-of-plea hearing, the probation office prepared a PSI Report. With respect to the 2015 conviction, the PSI Report stated, in part, that the defendant had been found guilty on November 12, 2014. It added that, on January 14, 2015, he was sentenced to ninety days' imprisonment, followed by five years of probation. The PSI Report then recounted that the defendant's probationary term was later revoked and that he was sentenced to a one-year term of immurement at that time.

Switching to the guideline sentencing range (GSR) for the offenses of conviction, the PSI Report observed that those offenses (as Class B felonies) normally would carry a supervised release term of two to five years. See USSG §5D1.2(a)(1). In this instance, though, the guidelines dictated a mandatory minimum

six-year term of supervised release because the defendant had a qualifying prior conviction under 21 U.S.C. § 841(b)(1)(C). See id. §5D1.2(c).

The defendant objected to several aspects of the PSI Report, but he did not object either to the inclusion of the 2015 conviction as a sentence-enhancer or to the description of the events surrounding that conviction. Nor did he object to the proposed six-year mandatory minimum term of supervised release.

The district court convened the disposition hearing on July 18, 2018. Congress has directed that where, as here, the government has filed an information pursuant to section 851(a)(1), the district court shall inquire of the defendant "whether he affirms or denies that he has been previously convicted." 21 U.S.C. § 851(b). The district court also must inform the defendant that "any challenge to a prior conviction which is not made before [the] sentence is imposed" cannot thereafter be pressed. Id.

The court below complied with these statutory imperatives. After confirming with defense counsel that there was no objection to the truthfulness of the Information, the court asked the defendant himself whether he had previously been convicted of a controlled substance offense in New York as limned in the Information. The defendant admitted that he had. Relatedly, the court advised the defendant that if he did not raise

- 4 -

a challenge to the Information then and there, he could not subsequently challenge it. No challenge emerged.

The district court went on to find that the defendant qualified as a career offender, see USSG §4B1.1(a), citing the 2015 conviction and the defendant's previous conviction for a putative crime of violence (namely, a 1999 New York robbery conviction under N.Y. Penal Law § 160.10). This career offender classification elevated the GSR for the offenses of conviction to 188-235 months. Additionally, the court found that the GSR carried a six-year mandatory minimum term of supervised release. See 21 U.S.C. § 841(b)(1)(C); see also USSG §5D1.2(c). In the end, the court imposed a downwardly variant incarcerative sentence of 140 months, to be followed by six years of supervised release.

The defendant appealed his sentence, challenging his classification as a career offender. His appeal focused on his term of imprisonment and did not challenge his supervised release term. We found the career offender classification inappropriate, sustained the defendant's appeal, vacated his sentence, and remanded for resentencing. See Rabb I, 942 F.3d at 7.

At resentencing, the defendant again eschewed any challenge to the Information and again voiced no objection to the applicability of a six-year mandatory minimum supervised release term. The district court noted that there were "no disputed issues other than [the prison] sentence" and again accepted the facts

adumbrated in the PSI Report.  The court also incorporated by reference "everything [it] said at the last sentenc[ing]" to the extent that those findings were not inconsistent with the vacatur of the career offender designation.[1]  It then discussed the defendant's personal history, his criminal record, and the gravity of the fentanyl problem in Maine.  Recalculating the defendant's GSR to be 84-105 months, the court imposed a low-end 84-month term of immurement, to be followed by six years of supervised release. This timely appeal ensued.

## II. ANALYSIS

This time around, the defendant's appeal challenges only his six-year mandatory minimum term of supervised release.  In support, he advances two principal claims of error.  First, he notes that the sentencing court did not make an explicit finding that the 2015 conviction was final in the context of section

---

[1] Without citation to any relevant authority, the defendant challenges the efficacy of this incorporation by reference.  In a footnote in his reply brief, he asserts that because his original sentence was vacated, the events of the first sentencing are "nullified."  This challenge is meritless:  federal courts do not place a premium on longiloquence, and a district court has wide discretion to incorporate by reference readily ascertainable facts.  See, e.g., In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 40 (1st Cir. 2009) (holding that district court could incorporate by reference its prior orders when expanding a class); United States v. Tulloch, 380 F.3d 8, 10 (1st Cir. 2004) (per curiam) (affirming sentencing court's adoption by reference of mandatory conditions of supervised release).  Nothing in our earlier opinion precluded the district court from incorporating by reference at the new sentencing hearing findings and conclusions that remained pertinent.

841(b)(1)(C). Without such a finding, he contends, the court erred in enhancing his GSR to encompass a mandatory minimum six-year term of supervised release. Second, he submits that the facts surrounding the 2015 conviction needed to be proved beyond a reasonable doubt before a jury rather than found under a preponderance-of-the-evidence standard by a sentencing judge. See Alleyne v. United States, 570 U.S. 99, 108 (2013); Apprendi v. New Jersey, 530 U.S. 466, 476 (2000). Because the district court allegedly flouted this principle, he claims that the 2015 conviction was improperly considered and that, therefore, the six-year mandatory minimum term of supervised release cannot stand.

The government takes a proactive approach to these claims. As a threshold matter, it contends that the defendant waived any challenge to his supervised release term. We start there and then shift to an examination of the defendant's asseverational array.

## A.  Waiver.

The government asserts that the defendant waived, rather than forfeited, any challenge to the validity of the Information and its effect on his sentence. This distinction is potentially important:  a waived claim is not reviewable at all, whereas a forfeited claim may be reviewed for plain error. See United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002).

- 7 -

The government bases its argument on a series of events, including the defendant's failure to employ the procedures provided by section 851(c) to challenge the validity of the Information; his acknowledgment of the truthfulness of the Information at his original sentencing; his confirmation at that hearing, in response to the district court's query, that he understood the consequences of failing to challenge the Information then and there; his omission of any challenge to the supervised release term during his first appeal; and his acquiescence to a six-year term of supervised release both at his original sentencing and at resentencing. In the government's view, these events, singly and in combination, show conclusively that the defendant "intentionally relinquish[ed] or abandon[ed]" any challenge to the Information or its effect on his sentence. Id.

The government's waiver argument finds some purchase in section 851 itself. The statute directs that "[a]ny challenge to a prior conviction" that is not raised before the imposition of an enhanced sentence "shall be waived." 21 U.S.C. § 851(c)(2). There remains an open question, though, as to whether "any challenge to a prior conviction" encompasses an objection to the finality of a prior conviction as opposed to an objection to the existence vel non of that prior conviction. See, e.g., United States v. Webster, 628 F.3d 343, 345-46 (7th Cir. 2010) (declining to decide whether

"finality" is captured by the "any challenge" language of section 851(c)). This court has not yet spoken to that question.

We need not wade into these uncharted waters. Even if we assume that the defendant's claims of error are not waived, they are easily dispatched. Since waiver, if found, would do no more than confirm that all roads lead to Rome, we bypass the waiver issue and instead explain why the defendant's claims are hopeless.

## B.  **Absence of Express Finding of Finality**.

The defendant argues that the district court should not have imposed the enhanced six-year mandatory minimum term of supervised release under section 841(b)(1)(C). This argument draws its essence from the district court's failure to make an express finding that the 2015 conviction was final.

Generally, claims of sentencing error are reviewed for abuse of discretion. See Gall v. United States, 552 U.S. 38, 41 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). But this standard is not monolithic; within it, we review a sentencing court's legal conclusions de novo and its factual determinations for clear error. See United States v. Ramos-Paulino, 488 F.3d 459, 463 (1st Cir. 2007). Even so, "[t]hese standards of review may be altered where a party fails to preserve claims of error in the court below." United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). This is such a case: the defendant's challenge to the lack of an express finding of

finality is raised for the first time in this court. Consequently, our review is for plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

To establish plain error, the defendant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. The proponent of plain error must touch all four of these bases in order to prevail. See United States v. Pinkham, 896 F.3d 133, 136-37 (1st Cir. 2018). "The plain error hurdle is high," United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989), and the defendant stumbles at both the second and third steps.[2]

To begin, we discern no clear or obvious error in the sentencing court's failure to make an express finding of finality regarding the 2015 conviction. The defendant suggests that because "an accurate guidelines calculation is a sine qua non to a valid federal sentence" and because the 2015 conviction was essential to the determination of his GSR and, in particular, the mandatory minimum supervised release term, see 21 U.S.C. § 841(b)(1)(C) (requiring a supervised release term of "at least 6 years" if the

---

[2] In our ensuing analysis, the first step of the plain error matrix merges into the second, and we find it unnecessary to reach the fourth step.

defendant committed the offenses of conviction "after a prior conviction for a felony drug offense [became] final"), the sentencing court committed an obvious error by not making an express finding as to the finality of that conviction.  We do not agree.

To establish "clear or obvious error," a party must show that the error is contrary to existing law.  See United States v. Bennett, 469 F.3d 46, 50-51 (1st Cir. 2006).  In other words, the error must be "indisputable" in light of controlling law.  United States v. Jones, 748 F.3d 64, 69-70 (1st Cir. 2014).  Here, however, the defendant has not identified any authority, whether in a statute or in the case law, that would require a district court to make an express finding concerning the finality of a prior conviction before imposing the enhanced sentence under section 841(b)(1)(C).  And although an explicit annunciation of findings related to an enhanced sentence is always preferable, the "absence of such findings is not always fatal."  United States v. Carbajal-Váldez, 874 F.3d 778, 783 (1st Cir. 2017).

In this case, the absence of an express finding of finality does not amount to a clear or obvious error.  Although the defendant has questioned the absence of an express finding of finality, he has proffered no credible reason to suggest that the conviction actually lacked finality.  And, moreover, on whole-record review, the surrounding facts mitigate any necessity for an

- 11 -

express finding. After all, the PSI Report's treatment of the 2015 conviction as final was not challenged by the defendant; the defendant himself admitted to the conviction in a colloquy with the district court, and that colloquy gives no reason to doubt the conviction's finality; and the fact that the defendant was sentenced to an additional prison sentence when his probation on the 2015 conviction was revoked incrementally strengthens the inference of finality.

In all events, the record contains substantial evidence indicating that the district court implicitly determined the 2015 conviction to be final. At the original sentencing hearing, the court engaged in the colloquy required by section 851(b) and confirmed with both the defendant and his counsel that the defendant had previously been convicted of the crime delineated in the Information. The court proceeded to find that the defendant had "a prior conviction for a controlled substance offense as detailed in [the PSI Report]." What is more, the PSI Report (expressly adopted by the sentencing court) contained numerous details about the 2015 conviction, including the date of the conviction, the parameters of the defendant's sentence, and a description of the subsequent revocation of probation. In short, the district court treated the 2015 conviction as final, and the record — fairly read — indicates that the court implicitly determined that the 2015 conviction was final. See id. (explaining

that reviewing court may uphold an enhancement when "the sentencing record, taken as a whole, reliably shows that the relevant factual questions were 'implicitly resolved' by the sentencing court" (quoting United States v. Van, 87 F.3d 1, 3 (1st Cir. 1996))).

Nor can it be said that the sentencing court's implicit determination that the 2015 conviction was final was itself clear or obvious error. To begin — as noted above — the defendant has proffered no credible reason to suggest that the conviction actually lacked finality. Furthermore, the conviction — as presented to the court — bore sufficient indicia of finality to ground the implicit finding.[3] See United States v. Etienne, 772 F.3d 907, 913 (1st Cir. 2014) (explaining that on plain error review, courts "reverse only sparingly" and "'correct only the

---

[3] We note that we have not yet spoken definitively as to the attributes of "finality" in the context of section 841, and our sister circuits have exhibited some variations in approach. See, e.g., United States v. Suarez, 682 F.3d 1214, 1220 (9th Cir. 2012) ("[A] conviction is not final under § 841(b)(1) while that conviction is subject to direct appellate review, including certiorari"); United States v. Williams, 616 F.3d 760, 767 (8th Cir. 2010) (stating that prior conviction is final when defendant is found guilty and sentenced to probation); United States v. Short, 947 F.2d 1445, 1460 (10th Cir. 1991) ("[A] sentence is final for purposes of § 841 when the conviction is no longer subject to examination on direct appeal."). On plain error review, these variations are insufficient to breathe life into the defendant's moribund claim of plain error. See United States v. Gonzalez, 981 F.3d 11, 22 (1st Cir. 2020) (holding that "ambiguous case law does not give rise to the clear or obvious error necessary to comport with the plain-error construct").

most egregious of unpreserved errors'" (quoting United States v. Sánchez-Berríos, 424 F.3d 65, 73 (1st Cir. 2005))).

We add that the defendant's claim of error also fails to satisfy the third element of the plain error matrix. That element requires that the defendant show a reasonable probability that the claimed error affected his substantial rights. See Duarte, 246 F.3d at 61-62. In a sentencing appeal, such a requirement entails a showing of a reasonable likelihood that, but for the claimed error, his sentence would have been different. See United States v. Bramley, 847 F.3d 1, 7 (1st Cir. 2017).

As to this point, the defendant hinges his argument on the Supreme Court's holding in Molina-Martinez v. United States, 136 S. Ct. 1338 (2016). In that case, the Court concluded that, "[w]hen a defendant is sentenced under an incorrect Guidelines range — whether or not the defendant's ultimate sentence falls within the correct range — the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." Id. at 1345. Put another way, the Court concluded that an incorrect GSR usually will affect a defendant's substantial rights, regardless of the actual sentence imposed. See id.

Contrary to the defendant's importunings, Molina-Martinez does not rescue his claim of error. There, the defendant established that the calculation of his GSR was incorrect. See

id. at 1344-45. That is not the situation here: the defendant has not established that he was sentenced under an incorrect GSR. Importantly, he does not contend — nor does he offer us a reason to believe — that his 2015 conviction was anything other than final. Seen in this light, Molina-Martinez is inapposite, and the defendant has failed to show a reasonable probability that the correction of the purported error — the failure to make an explicit finding on finality — would produce either a different GSR or a different sentence. See United States v. Olano, 507 U.S. 725, 734 (1993) (requiring a showing that the alleged error was prejudicial in order to satisfy the third element of plain error review); Bramley, 847 F.3d at 7 (requiring "a reasonable probability that, but for the error, the outcome would have been different"). Thus, he has not satisfied the third element of plain error.

To sum up, we conclude that neither the sentencing court's implicit determination that the 2015 conviction was final nor the lack of an explicit articulation of that finding constituted clear or obvious error (if error at all). We also conclude that the defendant has failed to show that, but for the purported error, his sentence would have been different. Given these shortcomings, plain error is plainly absent.

## C.  Apprendi/Alleyne.

This brings us to the defendant's last challenge to his supervised release term. He asserts that the facts surrounding

- 15 -

his 2015 conviction increased his sentence by increasing his term of supervised release and are therefore elements of an aggravated crime that had to be proved beyond a reasonable doubt before a jury.[4]  See Apprendi, 530 U.S. at 476; see also Alleyne, 570 U.S. at 108.  Since they were found only by a sentencing judge, he posits, his Fifth and Sixth Amendment rights were violated.  See Apprendi, 530 U.S. at 476; see also Alleyne, 570 U.S. at 115-17.

This claim, too, makes its debut on appeal.  Once again, our review is only for plain error.  See Duarte, 246 F.3d at 60.

The defendant's claim of error is rooted in a misreading of the case law.  In Apprendi, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury[] and proved beyond a reasonable doubt."  530 U.S. at 490.  The Court later extended the Apprendi doctrine, holding that facts that "increase the mandatory minimum sentence are . . . elements and must be submitted to the jury and found beyond a reasonable doubt." Alleyne, 570 U.S. at 108.

Apprendi and Alleyne do not control here.  In Almendarez-Torres v. United States, the Supreme Court held that facts establishing a prior conviction are sentencing factors, not

---

[4] The defendant observes that the facts surrounding the 2015 conviction were not described in the indictment in this case.  By the same token, he did not admit to those facts in his guilty plea.

elements of an offense.  See 523 U.S. 224, 230 (1998) (calling a prior conviction "as typical a sentencing factor as one might imagine").  Both the Apprendi Court and the Alleyne Court declined to revisit Almendarez-Torres, instead carving out an exception for prior convictions.  See Apprendi, 530 U.S. at 489-90 (finding that Almendarez-Torres represents "a narrow exception to the general rule"); see also Alleyne, 570 U.S. at 111 n.1 (recognizing that Almendarez-Torres remains good law and declining to revisit it).  Unless and until the Supreme Court changes course, Almendarez-Torres constitutes binding precedent that demands our allegiance.  See Agostini v. Felton, 521 U.S. 203, 237 (1997); United States v. McIvery, 806 F.3d 645, 653 (1st Cir. 2015).

Consistent with Almendarez-Torres, we hold that the defendant's Apprendi/Alleyne challenge lacks force.  The court below "hardly could have committed plain error by adhering to binding Supreme Court precedent."  United States v. Gonzalez, 949 F.3d 30, 42 (1st Cir. 2020).

## III. CONCLUSION

We need go no further.  For the reasons elucidated above, the sentence is


**Affirmed**.